**UAG WEST BAY AM, LLC et al.**

v.

**Nicholas E. CAMBIO et al.**

**No. 2008–132–Appeal.**

Supreme Court of Rhode Island.

Feb. 5, 2010.

Robert G. Flanders, Jr., Esq., Providence, for Plaintiff.

Thomas Dickinson, Esq., for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The defendant, Bald Hill Commons Condominium Association, Inc. (the Condominium Association), appeals from an order denying its motion for an extension of time to file a notice of appeal and dismissing its notice of appeal. The defendant contends that its appeal was timely because the Superior Court clerk failed to properly enter the judgment and failed to provide the parties with notice of the entry of judgment from which they wished to appeal. It further argues that, even if its filing of the notice of appeal was not timely, it has demonstrated excusable neglect for any delay.

This case came before this Court pursuant to our order directing the parties to appear and show cause why this case should not summarily be decided. After considering the parties' written and oral submissions, we conclude that cause has not been shown. For the reasons set forth in this opinion, we affirm the order of the Superior Court.

## I

### Facts and Procedural History

The underlying facts [1] of this case involve access rights for the entrance to the "Inskip Auto Mall" car dealership in Warwick, Rhode Island, as well as access rights to a nearby parking area used by the dealership. The plaintiff UAG West Bay AM, LLC (UAG West Bay) manages

---

1. The majority of these facts derive from plaintiffs' complaint. We note, however, that we include these facts to provide some context for the issues in dispute in this case; the underlying facts themselves have no bearing on the disposition of those issues.

the Inskip dealership and leases the dealership property from plaintiff Car War, LLC (Car War), through an affiliated company, plaintiff UAG Realty, LLC (UAG Realty). Car War also owns a "remote parking area" near the dealership that UAG West Bay uses for long-term parking of car inventory and employee parking.

The Inskip dealership abuts Bald Hill Commons Condominium (Bald Hill Commons), a commercial shopping center. Over the course of at least ten years, the Inskip dealership maintained a curb cut linking Inskip's main campus with "Inskip Way," an access drive that lies within Bald Hill Commons. It later installed a second curb cut as well. The curb cuts provide access from the dealership to both the shopping center and the remote parking area.

According to plaintiffs, in June 2004, defendant Nicholas E. Cambio, one of the original Bald Hill Commons developers, contacted UAG West Bay's chief operating officer and asserted that he held the exclusive right to grant access between Bald Hill Commons and any adjacent properties. He allegedly demanded that UAG West Bay pay a one-time access fee payable to him personally. UAG West Bay refused to make such payment. In January 2005, Mr. Cambio allegedly threatened to block the dealership's curb cuts with concrete blocks to prevent access to Inskip Way. Shortly thereafter, plaintiffs filed the instant action in the Superior Court against the Condominium Association and Mr. Cambio, seeking injunctive relief restraining defendants from interfering with their easement rights of access to, and use of, the curb cuts, the condominium roadways, and the remote parking area. They also requested a declaratory judgment stating the same. Finally, they requested a judgment declaring that they have no obligation to pay an access fee to Mr. Cambio or to the Condominium Association. The nub of the dispute concerned certain special declarant rights that Car War alleged it held in Bald Hill Commons. After the complaint was filed, however, a conveyancing error in the deeds purporting to transfer such declarant rights was discovered. The plaintiffs sought to remedy the defects by executing and filing corrective deeds; defendants on the other hand argued that the conveyances were fatally defective and void, thus defeating any interest plaintiffs claimed in the condominium.

Subsequently, the parties filed cross-motions for summary judgment. On November 21, 2006, the hearing justice granted partial summary judgment in favor of plaintiffs, holding that Car War held valid title to the declarant rights and thus the creation of the three units was a valid exercise of its authority. Thereafter, the parties entered into negotiations to resolve the remaining issues, eventually agreeing to a consent judgment.

On December 10, 2007, plaintiffs' attorneys and defendants' attorney signed a document entitled "Final Judgment," that incorporated the hearing justice's grant of partial summary judgment as well as the issues agreed upon by the parties.[2] The hearing justice then signed the judgment in the presence of attorneys representing all parties. The defendants' attorney then asked plaintiffs' counsel to file the judgment with the Kent County Superior Court clerk's office and to provide him with a fully executed copy of the document.[3] The plaintiffs' attorney filed the

---

2. The "Final Judgment" also purported to preserve the defendants' rights to appeal the partial summary judgment granted in favor of plaintiffs.

3. The hearing justice was sitting in Washington County when she approved the final judgment.

judgment with the clerk's office that same day and mailed a copy to defendants' counsel, which was received the following day. The enclosed judgment bore a stamp indicating that it was filed with the clerks' office on December 10, 2007, but it was not signed by the clerk. In fact, the judgment was not signed by the clerk until December 11, 2007, although the docket sheet indicates that it was entered on December 10. The clerk's office never sent any party a notice of entry of judgment.

On January 4, 2008, defendant filed an emergency motion for a brief extension of time to file its notice of appeal. In its motion, defendant asserted that there was excusable neglect justifying an extension of time within which to file an appeal. The defendant attached two affidavits to its motion—one from defendant's attorney of record and one from an associate with the same firm. Both attorneys asserted that the attorney of record had completely delegated responsibility for the filing of the notice of appeal to the associate and that the latter failed to make the filing in a timely manner because of serious illness. The defendant Condominium Association also filed a notice of appeal from the December 10, 2007 judgment on January 4, 2008.[4]

The hearing justice held an evidentiary hearing on defendant's motion on January 23 and January 24, 2008. At this hearing, defendant raised an additional argument, *viz.*, that the judgment was "defective and a nullity" because the clerk did not actually sign the document until December 11, notwithstanding the docket notation indicating that it was entered on December 10, 2007.

The defendant presented the testimony of Todd Viccione, M.D., who discussed the associate's medical condition during December 2007. There can be little doubt that she was ill at that time, although there was some debate as to the amount of work she actually was able to perform.

The defendant's attorney of record testified that he was present in court on December 10, 2007, when the hearing justice signed the final judgment. He also confirmed that he received a letter from one of plaintiffs' attorneys the next day, indicating that judgment had been entered on December 10. He stated that, upon returning to his office on December 10, he spoke with the associate and told her to file a notice of appeal from the adverse summary-judgment decision. He further explained that he decided to delegate responsibility for the filing to the associate because she was a trusted colleague and a former law clerk and because he was extremely busy with other cases and had never filed a Supreme Court appeal. He also stated that the associate had worked on some aspects of the case, but she was not an attorney of record in the matter.

According to the attorney of record, the associate enjoyed "a great deal of autonomy [,]" and he did not "huddle over" her to make sure the appeal had been filed. Indeed, he recalled discussing the filing of the appeal "in passing" with the associate, "about five or six days" after giving her the assignment. At that time, she told him that she was "taking care of it." Thereafter, he conceded, he "never checked with her once * * * to see whether she had prepared and filed a notice of appeal." Although the attorney of record testified that his firm had "a system in place" whereby a deadline is docketed so that attorneys are reminded of it, he stated that he never docketed the appeal deadline in this case. Further, he acknowledged that he did not know whether the

4. Nicholas Cambio did not file a notice of appeal.

associate had ever entered the deadline into the firm's docketing system.

On January 3, 2008, the attorney of record emailed the associate to confirm that she had filed the notice of appeal, only to learn that it had never been filed. Under cross-examination, he said that he was not aware of the length of the appeal period and confirmed that he was "totally depending on [the associate] to find out what the applicable deadline was and file the notice of appeal." He also conceded that to his knowledge the associate had never filed a notice of appeal to this Court. He further testified that he was unaware that she was suffering from any illness in December 2007.

The associate also testified at the evidentiary hearing. She stated that she never informed any of her colleagues of her illness during the month of December, despite the fact that she "was having trouble getting a lot of things done." Although she was experiencing serious medical symptoms during the appeal period, she performed approximately fifty hours of legal work for clients. She further testified that she did not realize that December 31[5] was the deadline for filing the notice of appeal because she never calculated when the twenty-day period of appeal would expire. The associate also confirmed that she had never formally entered an appearance in the case.

On February 6, 2008, the hearing justice denied defendant's request for an extension of time to file a notice of appeal. The hearing justice found that the appeal period began to run on December 11, 2007— the date that the clerk signed the judgment. She ruled that Article I, Rule 4 of the Supreme Court Rules of Appellate Procedure did not require the judgment to be docketed for it to be appealed. The hearing justice also believed that, under the circumstances, the clerk's failure to mail a copy of the entered judgment did not mean that the appeal period had not begun to run. She noted that the parties' legal counsel were present when she signed the judgment, implying that they therefore were on notice that the appeal period was about to begin.

On the issue of excusable neglect, the hearing justice noted that this Court has previously ruled that a busy legal practice does not meet the standard of excusable neglect. She observed that the associate was never an attorney of record in the case until after the deadline for filing the notice of appeal had expired. She therefore found that the associate's illness had no bearing on the case. Rather, as the primary attorney in the matter, it was the attorney of record's responsibility to follow up and make sure the notice of appeal had been filed. The hearing justice therefore denied defendant's motion to extend and dismissed the Condominium Association's notice of appeal. An order was entered on February 6, 2008, from which the Condominium Association timely appealed.

## II

### Standard of Review

Questions of law are reviewed *de novo* by this Court. *Carnevale v. Dupee,* 783 A.2d 404, 408 (R.I.2001). "Like questions of statutory construction, the interpretation of court rules of procedure is a legal question for the court." *McDonough v. McDonough,* 962 A.2d 47, 54 (R.I.2009); *see also Crowe Countryside Realty Associates, Co., LLC v. Novare Engineers, Inc.,*

---

5. As discussed at greater length below, December 31, 2007 would have been the deadline for filing a notice of appeal regardless of whether judgment were deemed entered on December 10 or December 11.

891 A.2d 838, 840 (R.I.2006) (reviewing Rule 26 of the Superior Court Rules of Civil Procedure *de novo* ); *In re James C.,* 871 A.2d 940, 942 n. 6 (R.I.2005) (considering the interpretation of the Rhode Island Rules of Evidence *de novo* ).

"This court will review the Superior Court's excusable-neglect determination for abuse of discretion." *Friedman v. Lee Pare & Associates, Inc.,* 593 A.2d 1354, 1356 (R.I.1991); *Small Business Loan Fund Corp. v. Gallant,* 795 A.2d 531, 532 (R.I.2002) ("This Court will reverse a Superior Court dismissal of an appeal only upon a finding that the motion justice abused his or her discretion.").

## III

## Analysis

## A

## The Entry of Judgment

On appeal, defendant argues that the Superior Court clerk's office failed to properly enter and provide notice of the judgment in accordance with the Superior Court Rules of Civil Procedure. First, defendant alleges that the judgment in the instant case was not properly entered pursuant to Rule 79(a) of the Superior Court Rules of Civil Procedure [6] because the docket does not reflect the December 11, 2007 entry of the judgment. The defen-

dant further argues that the clerk's office did not comply with Rule 77(d) of the Superior Court Rules of Civil Procedure [7] because it failed to mail notice of entry of judgment to the parties.

Rule 58(a) of the Superior Court Rules of Civil Procedure states, in part, that a "judgment is effective and shall be deemed entered when so set forth and signed by the Clerk." Likewise, Rule 4(a) of our rules provides that a "judgment, order, or decree is entered within the meaning of [Rule 4(a) ] when it is set forth and signed by the clerk of the trial court in accordance with the applicable rules of the trial court." *See generally* Robert B. Kent, et al., *Rhode Island Civil and Appellate Procedure* § 58:2 at 41 (2006). Rule 4(a) provides that a notice of appeal must be filed within twenty days "of the date of the entry of the judgment, order, or decree appealed from." Under the Superior Court rule, "[u]ntil a judgment is entered, no appeal can be taken, and an appeal filed before the entry of judgment on a separate paper is premature and subject to dismissal." *McClellan v. Thompson,* 114 R.I. 334, 341, 333 A.2d 424, 428 (1975) (discussing Rule 58(a)).

Although Rule 77(d) generally requires the clerk to serve notice of entry of judgment by mail upon each party not in default for failure to appear, the clerk's failure to comply with this requirement

---

**6.** Rule 79(a) of the Superior Court Rules of Civil Procedure provides, in pertinent part, as follows:

"The clerk shall keep the civil docket and shall enter therein each civil action to which these rules are made applicable. * * * All papers filed with the clerk * * * all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number. * * * The entry of an order or judgment shall show the date the entry is made."

**7.** Rule 77(d) of the Superior Court Rules of Civil Procedure states in relevant part:

"Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail * * * upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. * * * No notice need be served if an order or judgment is entered in open court in the presence of the parties or their counsel."

"does not void the judgment." *McClellan*, 114 R.I. at 341, 333 A.2d at 428; *see also* Kent, § 58:4 at 41. In the case under review, it is undisputed that the hearing justice signed the final judgment on December 10, 2007, in the presence of attorneys representing all parties. The Superior Court clerk, however, signed the judgment outside the presence of the parties on December 11. Rule 77(d) "authorizes a party to give notice of the entry of judgment by sending a copy of the judgment by mail to his adversary." *Thomas v. Ross*, 477 A.2d 950, 951–52 n. 2 (R.I. 1984). Here, an attested copy of the final judgment bearing both the hearing justice's signature and the December 10, 2007 time-stamp of the clerk's office was mailed by opposing counsel to defendant's attorney of record on December 10, 2007. Moreover, he manifestly believed that the appeal period had begun to run (or would soon begin to run) because he asked his associate to file a notice of appeal even before receiving the copy.

The defendant cites this Court's decision in *Kay v. Menard*, 727 A.2d 665 (R.I.1999), in support of its contention that the appeal period never began to run because of the clerk's failure to mail the parties notice of entry of final judgment. The circumstances of the instant case differ from those presented in *Kay* in several vital respects, however. In *Kay*, the trial justice's clerk prepared and signed an order commemorating the denial of the defendant's motion for a new trial, apparently outside the presence of the parties. *Id.* at 666. Unlike the final judgment in the instant case, however, "nothing noted upon the order [in *Kay*] indicat[ed] the time when the order was prepared and signed by the court clerk, nor [did] it contain any file marking showing when it was entered." *Id.* The clerk's office apparently did not provide the parties with notice of entry of judgment. *Id.* The defendant's

attorney subsequently prepared another order purporting to be a judgment and had it signed by the trial justice and the clerk. *Id.* Under those circumstances, this Court held that the original order was invalid because the parties lacked notice and knowledge of its entry. *Id.*

Unlike the order at issue in *Kay*, the judgment in the instant case was dated by the clerk. Moreover, the parties had knowledge that entry of judgment was imminent because their respective attorneys were present when the hearing justice signed the judgment, and plaintiffs' attorney notified defendant's attorney of record that the judgment had been filed with the clerk's office on December 10. This Court has noted that "[i]t is incumbent upon the party intending to appeal to be watchful for the entry of a valid judgment." *Blais v. Beacon Mutual Insurance Co.*, 812 A.2d 838, 839 (R.I.2002) (mem.). Under the circumstances presented in this case, the clerk's failure to mail the parties notice of the entry of judgment did not invalidate that judgment.

■ In addition, the clerk's erroneous recording of the date of entry of judgment on the docket pursuant to Rule 79(a) did not invalidate the judgment. Although Rule 79(a) requires that the clerk make an entry in the civil docket after signing a final judgment, it has been observed that "this ministerial act is not essential to the effectiveness of the judgment. It is deemed entered and is effective when the clerk signs it." Kent, § 58:2 at 41.

Moreover, we note that December 31, 2007 was the deadline for filing a notice of appeal regardless of whether judgment was entered on December 10 or December 11. Counting twenty days from December 10, 2007, the deadline for filing a notice of appeal would have fallen on Sunday, December 30, 2007. The defendants there-

fore would have had until the next business day (Monday, December 31, 2007) to file a notice of appeal under Article I, Rule 20(a) of the Supreme Court Rules of Appellate Procedure. Likewise, the deadline for filing a notice of appeal from the actual date of entry (December 11) was also December 31. Under these circumstances, the failure of the docket to reflect the fact that judgment properly was entered on December 11—and not December 10—did not toll the running of the appeal period.

## B

### Excusable Neglect

■ Rule 4 of the Rules of Appellate Procedure requires an appellant to file its notice of appeal within twenty days of the entry of judgment. Rule 4(a) also states:

"Upon a showing of excusable neglect, the trial court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty (30) days from the expiration of the original time prescribed by this subdivision. Such an extension may be granted before or after the time otherwise prescribed by this subdivision has expired * * *."[8]

Relief from the repercussions of failure to comply with procedural requirements will not be granted "unless it is first factually established that [counsel's] neglect was occasioned by some extenuating circumstance of sufficient significance to render it excusable." *King v. Brown*, 103 R.I. 154, 157, 235 A.2d 874, 875 (1967). We have characterized such circumstances as those that are "out of that party or counsel's control." *Boranian v. Richer*, 983 A.2d 834, 840 (R.I.2009). We hold that defendant has not demonstrated excusable neglect in this case.

As we noted in *Astors' Beechwood v. People Coal Co.*, 659 A.2d 1109, 1115 (R.I. 1995), counsel's explanation that he or she:

"'overlooked' the filing of a notice of rejection, apparently because of duties attendant to his practice, was not an 'extenuating circumstance of sufficient significance' to warrant relief from judgment. * * * Thus, we [held] that counsel's explanation that it was 'an extremely busy time' for him was insufficient to constitute excusable neglect."

Very recently, we also observed that "excusable neglect must involve something more than a careless deviation from standard office procedure or the failure to remember a deadline." *Boranian*, 983 A.2d at 839-40; *cf. Astors' Beechwood*, 659 A.2d at 1116 (noting that this Court will decline to grant relief if counsel's failure to file a timely notice of rejection "was fully within his [or her] control, and his [or her] failure to do so derived from his [or her] own conduct").

The facts of the instant case are analogous to those presented in *Friedman v. Lee Pare & Associates, Inc.*, 593 A.2d 1354 (R.I.1991). In that case, one of the parties was granted an extension to file its notice of appeal on the basis of the fact that one of its attorneys became ill during the twenty-day appeal period. *Id.* at 1356. This Court reversed that decision, noting that the attorney in question was an out-of-state attorney who never made a *pro hac*

---

**8.** We observe that in this case the thirty-day extension period under Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure expired on January 30, 2008. We do not address the question of whether the Superior Court had authority to grant an extension when it issued its decision on February 6, 2008 because this issue was not advanced on appeal. *See Friedman v. Lee Pare & Associates, Inc.*, 593 A.2d 1354, 1355 (R.I.1991) (holding that the Superior Court was without authority to grant an extension under Rule 4(a) *nunc pro tunc* after the expiration of fifty days from the judgment appealed from).

*vice* motion to appear before the Superior Court. *Id.* The out-of-state attorney's Rhode Island co-counsel was healthy during the appeal period, and nothing prevented him from filing a notice of appeal himself. *Id.*

 In the instant case, the attorney of record was lead counsel in all the proceedings in the Superior Court. The associate had never entered an appearance in the matter before the Superior Court, nor could she specifically recall signing any papers in the case. The attorney of record's assertion that he was extremely busy in December 2007 is not a sufficient basis for a finding of excusable neglect. *See Boranian,* 983 A.2d at 839–40; *Astors' Beechwood,* 659 A.2d at 1115–16. Nor is his assertion that he did not know how to file a notice of appeal. *Cf. Coutu ex rel. Coutu v. Porter,* 744 A.2d 405, 406 (R.I. 1999) (mem.) ("[T]he defendants' attorney's failure in the present case to file a timely notice was fully within his control. He had a responsibility to know the rules and procedures * * *."). Moreover, the attorney of record failed to monitor the status of the notice of appeal or even calculate when the window for filing the notice of appeal would close. He checked on the associate on only one occasion approximately a week after asking her to file the notice of appeal. At that time, he was told that the notice of appeal had not been filed, yet he failed to follow up with her until several days after the appeal period expired. A reasonably prudent attorney would have confirmed that his or her associate had actually filed the notice of appeal within the time period, or, discovering that he or she was incapable of doing so, assumed responsibility himself or herself. Therefore, the defendant's failure to file a timely notice of appeal cannot be considered excusable neglect.

## IV

### Conclusion

For the reasons discussed, we affirm the order of the Superior Court. The papers in this case may be returned to the Superior Court.

Justice FLAHERTY did not participate.