FIA Card Services, N.A.　　　　　　:

　　　　v.　　　　　　　　　:　　　　No. 2012-272-Appeal.
　　　　　　　　　　　　　　　(PC 11-2911)

James D. Pichette.　　　　　:

HSBC Bank Nevada, N.A.　　　　:

　　　　v.　　　　　　　　　:　　　　No. 2013-156-Appeal.
　　　　　　　　　　　　　　　(PC 11-194)

Robert L. Cournoyer.　　　　:

Discover Bank　　　　　　　:

　　　　v.　　　　　　　　　:　　　　No. 2013-157-Appeal.
　　　　　　　　　　　　　　　(PC 11-449)

Diana L. O'Brien-Auty.　　　　:

NOTICE:　This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| FIA Card Services, N.A. | : | |
| v. | : | No. 2012-272-Appeal. (PC 11-2911) |
| James D. Pichette. | : | |
| HSBC Bank Nevada, N.A. | : | |
| v. | : | No. 2013-156-Appeal. (PC 11-194) |
| Robert L. Cournoyer. | : | |
| Discover Bank | : | |
| v. | : | No. 2013-157-Appeal. (PC 11-449) |
| Diana L. O'Brien-Auty. | : | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The appeals before us emanate from the activities of three attorneys who authored pleadings, but did not disclose their respective identities, on behalf of pro se defendants in three separate debt collection cases, a practice colloquially known as ghostwriting.[1] These appeals present two issues of first impression in Rhode Island: (1) whether Rule 11 of the Superior Court Rules of Civil Procedure applies to an attorney who authored a pleading but neither signed it nor entered his or her appearance in the case; and (2) whether the anonymous preparation of pleadings for self-represented litigants is a permissible practice pursuant to the Supreme Court Rules of Professional Conduct. The attorneys in

---

[1] See In re Fengling Liu, 664 F.3d 367, 368 (2d Cir. 2011); Halley Acklie Ostergard, Unmasking the Ghost: Rectifying Ghostwriting and Limited-Scope Representation with the Ethical and Procedural Rules, 92 Neb. L. Rev. 655, 656 (2014).

question appeal from three separate orders entered by two hearing justices sanctioning them for their ghostwriting conduct. The hearing justices imposed sanctions on each attorney for drafting, but not signing, answers and objections to dispositive motions on behalf of the three pro se defendants. All three attorneys argue that Rule 11 does not apply because none had either signed the pleadings or entered an appearance, and that their conduct was a permissible form of limited-scope representation pursuant to Article V, Rule 1.2(c) of the Supreme Court Rules of Professional Conduct. We hold that the conduct of the three attorneys did not violate Rule 11 and, accordingly, we vacate the sanctions imposed by the three Superior Court orders.

## I

## Facts and Procedural History

## A

## Attorney Charles M. Vacca, Jr. (the FIA Action)

In May 2011, FIA Card Services, N.A. (FIA) initiated a credit card debt collection action against James D. Pichette. Pichette signed and filed an answer to FIA's complaint, denying FIA's allegation of outstanding debt and, in a two-count counterclaim, claimed breach of contract and violation of the "Fair Debt Collections Act." No attorney either signed the pleadings or entered an appearance on Pichette's behalf. FIA filed a motion to dismiss both counts of Pichette's counterclaim pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, to which Pichette filed an objection and memorandum in support of his objection. At the first hearing on the motion in January 2012, FIA's counsel told the hearing justice that Pichette's pleadings had been drafted, but not signed, by an attorney licensed in Rhode Island. When the hearing justice inquired, Pichette stated that he was involved with a debt consolidation company called Morgan Drexen. Pichette testified that, through this company, he was referred

to attorney Charles M. Vacca, Jr., who had drafted the documents that Pichette subsequently filed pro se with the court. The hearing justice continued the motion and then issued a notice to Vacca to appear before the court:

> "to conclusively determine [Vacca's] representation of Mr. Pichette[,] * * * whether or not preparation of pleadings without formally entering [Vacca's] appearance on behalf of the litigant [wa]s allowed by Rhode Island law[,] whether or not Rules of Professional Conduct ha[d] been violated[,] whether or not [Rule 11] ha[d] been violated[,] and whether or not sanctions should be imposed."

At the hearing, Vacca testified that he was "of counsel to an attorney who is an engagement attorney that's hired by Morgan Drexen and [he] advise[d] clients that [we]re under the jurisdiction of Rhode Island courts," that he had prepared the pleadings Pichette had subsequently filed pro se, and that he had prepared pleadings for other litigants who had come before the court. Pichette testified that he contacted Morgan Drexen regarding some credit card debt and that Kimberly Pisinski, Morgan Drexen's representative, had referred him to Vacca. Both Vacca and Pichette represented to the court that Pichette had declined full representation but had entered into a limited-representation agreement with Vacca. Pichette also testified, however, that he had not understood the affirmative defenses pled in his answer, the basis or substance of the counterclaims alleged, or the content of the objection to the motion to dismiss and the memorandum in support thereof. Vacca's counsel objected several times to the hearing justice's questions regarding Vacca and Pichette's relationship with Morgan Drexen, but the hearing justice overruled all of the objections.

The hearing justice issued a written decision on July 26, 2012, finding that ghostwriting was in direct conflict with Supreme Court Rules of Professional Conduct and violated Rule 11 and that, even though representation that was reasonably limited in scope was allowed pursuant

- 3 -

to Rule 1.2, Vacca had clearly provided only partial and inadequate representation. The hearing justice entered an order on the same day to the effect that Vacca "shall cease and desist the anonymous preparation of pleadings for self[-]represented litigants[,] * * * [and] provide written notice to each and every pending file in the Rhode Island Superior Court in which he ha[d] prepared such pleadings." The hearing justice referred the matter to: (1) Disciplinary Counsel for review of whether Vacca's conduct violated the Supreme Court Rules of Professional Conduct; and (2) the Rhode Island Attorney General "to determine whether or not Attorney Kimberly Pisinski [and] Morgan Drexen * * * are illegally practicing law in this state." Vacca timely appealed from the order.

**B**

**Attorney Wendy Taylor Humphrey (the HSBC Action)**

In January 2011, HSBC Bank Nevada, N.A. (HSBC) initiated a debt collection action against Robert L. Cournoyer, and Cournoyer signed and filed an answer denying HSBC's allegations. Three months later, HSBC filed a motion for summary judgment, to which Cournoyer filed a pro se objection and memorandum in support thereof. At the June 3, 2011 hearing on HSBC's motion, HSBC presented the hearing justice with a stipulation. When the hearing justice inquired whether Cournoyer understood the consequences of stipulating to a judgment against him and in favor of HSBC, Cournoyer began talking about "an agreement to pay the lawyer from California" and stated that Wendy Taylor Humphrey was the lawyer who had prepared the pleadings that he had filed with the court. Cournoyer also testified that he had not yet met Taylor Humphrey and thought she was going to be in court for the hearing that day to represent him. In response to the hearing justice's inquiries, Cournoyer also testified that he had called Morgan Drexen after seeing an advertisement on television, and his friend Carmen

Martinez—who had accompanied him to court that day—testified that Kimberly Pisinski, an attorney with Morgan Drexen, was the one who paid Taylor Humphrey. During a brief recess, the hearing justice telephoned Taylor Humphrey. The hearing justice then continued the motion for summary judgment to June 6, 2011, told Cournoyer that Taylor Humphrey would be ordered to appear at the June 6 hearing, and asked Cournoyer to also return to court on that day so he could meet Taylor Humphrey.

At the June 6, 2011 hearing, Taylor Humphrey testified that Morgan Drexen had asked her "to act as an advisor of sorts" to put together pleadings on behalf of its clients because Cournoyer's actual attorney, Kimberly Pisinski, was not licensed to practice in Rhode Island. Taylor Humphrey testified that she had spoken with Rhode Island's Chief Disciplinary Counsel "multiple" times before she had agreed to engage in any work for Morgan Drexen and had received "his blessing * * * to be able to assist these people." The hearing justice entered an order finding that Taylor Humphrey had ghostwritten pleadings for Cournoyer, further finding that this behavior was unethical and violated Rule 11, and imposing sanctions in the amount of $750.

Taylor Humphrey promptly sought review from this Court by filing a petition for writ of certiorari. After issuing the writ of certiorari, we quashed the hearing justice's order imposing sanctions because Taylor Humphrey had not been provided with an adequate notice and opportunity to be heard prior to the imposition of Rule 11 sanctions. We ordered that Taylor Humphrey be afforded a new hearing with proper notice and an opportunity to be heard, and that the hearing justice address the applicability of Rule 11 to the circumstances of the case, as well as make findings as to whether Taylor Humphrey had violated Rule 11. The hearing justice subsequently ordered Taylor Humphrey to appear and "[s]how [c]ause as to whether sanctions

should be imposed against you by this [c]ourt for violation of Rule 11 * * *." In the notice, the hearing justice specifically defined four issues that would be addressed at the hearing.[2] Prior to the hearing, Taylor Humphrey submitted a prehearing memorandum of law addressing these issues. At the show-cause hearing held on November 2, 2012, the hearing justice heard oral argument from Taylor Humphrey's counsel, but did not receive any additional testimony from Taylor Humphrey.

The hearing justice issued a written decision on January 17, 2013, finding that an attorney-client relationship existed between Cournoyer and Taylor Humphrey as a matter of fact and law, that Taylor Humphrey's conduct in this case violated Article V, Rule 8.4 of the Supreme Court Rules of Professional Conduct, and that Rule 1.2(c) did not preclude a finding of Rule 11 violations. The hearing justice subsequently entered an order finding that Rule 11 applied to Taylor Humphrey's "practice of preparing pleadings for pro se litigants without disclosing her identity" and that Taylor Humphrey's conduct violated Rule 11. The hearing

---

[2] The notice stated that:
> "this [c]ourt will address and you will be afforded an opportunity to be heard on the following issues:
> "1. Whether your practice of ghostwriting, which is the drafting of pleadings and other court documents on behalf of the Defendant, who is a self-represented litigant in this matter, is a violation of Rule 11 of the Rhode Island Rules of Civil Procedure;
> "2. Whether your representation of the Defendant for the sole purpose of preparation of pleadings and your failure to disclose such representation of the Defendant to the [c]ourt is a violation of Rule 11 of the Rhode Island Rules of Civil Procedure;
> "3. Whether your failure to sign a pleading, written motion or other papers filed in this case is a violation of Rule 11 of the Rhode Island Rules of Civil Procedure; and
> "4. Whether you violated Rule 11 of the Rhode Island Rules of Civil Procedure when you drafted documents for the Defendant in this action or for your client, knowing that they will be eventually filed with this [c]ourt."

justice also ordered a monetary sanction in the amount of $750. Taylor Humphrey timely appealed from the order.

## C

### Attorney Michael Swain (the Discover Bank Action)

The facts and travel of the Discover Bank action closely parallel those of the HSBC action, but with a different set of parties and attorneys. Discover Bank initiated a debt collection action against Diana L. O'Brien-Auty and moved for summary judgment. Attorney Michael Swain prepared an answer and an objection to the motion for summary judgment, both of which O'Brien-Auty signed and filed in the Superior Court. A fact unique to this case compared with the other two cases currently before us is that the following statement appeared in the pleadings authored by Swain: "This document was prepared by, or with the assistance of, an attorney licensed in RI and employed by Consumer Law Associates, LLC / Consumer Law Associates, LLP (CA, MI) / Consumer Law Associates, PLLC (NC) – 972-239-4804." At the first hearing on Discover Bank's motion for summary judgment, O'Brien-Auty testified that she had been paying a monthly fee to Consumer Law Associates and believed that it was consolidating her credit card debt and paying that debt off, and that she had never met Swain in person—had only spoken to him on the telephone—but believed that he was her attorney.[3] The hearing justice telephoned Swain and ordered him to appear in court on June 6, 2011. The hearing justice then continued the motion for summary judgment to June 6, 2011, told O'Brien-Auty that Swain would be in court on June 6, and asked O'Brien-Auty to also return to court on that day so she could meet Swain.

---

[3] Both HSBC's motion for summary judgment and Discover Bank's motion for summary judgment were heard on the same day by the same hearing justice.

The subsequent events in the travel of this case track those of the HSBC action identically. On June 6, 2011, after Taylor Humphrey testified and was sanctioned by the hearing justice, Swain testified that he was paid by "Persels and Associates"[4] to provide "unbundled legal services," that he had prepared the answer and objection to the motion for summary judgment pursuant to a limited-scope representation agreement, and that he "believed that what [he] was doing was a benefit to [O'Brien-Auty]." As with Taylor Humphrey, the hearing justice entered an order finding that Swain had ghostwritten pleadings in violation of Rule 11 and that this conduct had been unethical, and she imposed a sanction of $750. Swain subsequently filed an appeal with this Court, and we vacated the June 6, 2011 order on the basis that Swain had not been afforded proper notice and an adequate opportunity to be heard. We remanded the case to the Superior Court, ordered that Swain be provided a new hearing with proper notice, and we directed that the hearing justice address the applicability of Rule 11 to the circumstances of this case and make findings regarding whether Swain had violated Rule 11.

The hearing justice complied and issued a notice to Swain that was identical to the notice issued to Taylor Humphrey (see footnote 2, supra). Swain also filed a prehearing memorandum addressing the issues. The November 2, 2012 show-cause hearing was a joint hearing for both Attorneys Taylor Humphrey and Swain. The hearing justice heard oral argument on the issues from Swain's attorney, but she did not receive any additional testimony from Swain. The hearing justice subsequently issued a written decision on January 17, 2013, in which she made findings similar to those concerning Taylor Humphrey: An attorney-client relationship existed between O'Brien-Auty and Swain as a matter of fact and law; Swain's conduct in this case violated Rule 8.4; and Rule 1.2(c) did not preclude finding a Rule 11 violation. The hearing justice found a Rule 11 violation because Swain had not disclosed his specific identity. She

---

[4] Swain testified that Consumer Law Associates was a member of the "Persels Group."

stated that the fact that the ghostwritten pleadings in this case contained a written disclosure of a lawyer's assistance was not a distinguishing factor from the case involving Taylor Humphrey. The hearing justice subsequently entered an order finding that Rule 11 applied to Swain's "practice of preparing pleadings for pro se litigants" and that Swain's preparation of pleadings in this case violated Rule 11. The hearing justice also ordered a monetary sanction in the amount of $750. Swain timely appealed from the order.

## D

### Docketed Appeals

After prebriefing conferences were held in all three attorneys' appeals, we assigned each appeal to the plenary calendar for full briefing and argument.[5] We directed each attorney to address (1) the propriety of the imposition of Rule 11 sanctions under the circumstances of their respective cases; and (2) whether "'ghostwriting' is permitted under Article V, Rule 1.2(c) of the Supreme Court Rules of Professional Conduct." We also invited the Rhode Island Attorney General, the Office of Disciplinary Counsel, the Rhode Island Bar Association, and any other interested parties to file briefs as amici curiae.[6]

## II

### Standard of Review

The first issue before us in these three appeals is the imposition of Rule 11 sanctions against three members of the Rhode Island bar for drafting papers subsequently signed and filed by pro se litigants in the Superior Court. Because the propriety of this practice is an issue of first

---

[5] FIA notified us that it would not be participating in Vacca's appeal. Neither HSBC nor Discover Bank filed either prebriefing statements or briefs; both appellees were defaulted in accordance with Article I, Rule 18A of the Supreme Court Rules of Appellate Procedure.

[6] We thank the Attorney General, the Rhode Island Bar Association, and Certain Advisory Board Members of the Pro Bono Collaborative for the amici briefs and helpful insights into this rapidly evolving aspect of the legal profession. We also thank the office of the Attorney General for its participation at oral argument.

impression for this Court, our interpretation of Rule 11 lies at the heart of this matter. "Like questions of statutory construction, the interpretation of court rules of procedure is a legal question for the court." Rosano v. Mortgage Electronic Registration Systems, Inc., 91 A.3d 336, 339 (R.I. 2014) (quoting UAG West Bay AM, LLC v. Cambio, 987 A.2d 873, 877 (R.I. 2010)). We apply a de novo review to questions of law. Id. While "a trial justice has discretionary authority to formulate what he or she considers to be an appropriate sanction," we will reverse a sanction when it was imposed based on an erroneous view of the law. Pleasant Management, LLC v. Carrasco, 918 A.2d 213, 217 (R.I. 2007).

## III

### Discussion

The three sanctioned attorneys advance similar arguments before this Court. Attorney Taylor Humphrey argues that the hearing justice erred as a matter of law when she concluded that Taylor Humphrey's ghostwriting activities violated Rule 11. In addition, Taylor Humphrey argues that, contrary to the hearing justice's findings, the ghostwriting performed by Taylor Humphrey was in accordance with prevailing law. Taylor Humphrey contends that the hearing justice therefore erred by sanctioning actions that did not violate Rule 11 or any other established rule. Additionally, Taylor Humphrey avers that the hearing justice erred when, after the show-cause hearing and without notice to Taylor Humphrey, she independently researched and relied upon extrinsic facts not in the record in making her decision.[7]

---

[7] Attorney Taylor Humphrey and Attorney Swain both argued that the hearing justice violated the Supreme Court Code of Judicial Conduct by conducting, and relying on, independent research in rendering her decisions. See Article VI, Code of Judicial Conduct, Canon 3(B)(8) Commentary ("A judge must not independently investigate facts in a case and must consider only the evidence presented."). After careful review of the record, we fail to see how the hearing justice erred in this respect because none of her factual findings were based solely on this outside research.

Attorney Vacca also argues that his conduct did not violate Rule 11, but rather was in accordance with prevailing law. Furthermore, Vacca contends that the hearing justice erred in relying on "outdated federal case law" to find that his limited representation of Pichette violated Rule 11 and the Rules of Professional Conduct. Finally, Attorney Vacca argues that the hearing justice erred as a matter of law when he allegedly inquired and made findings about matters that were not included in the notice summoning him to appear.[8]

Attorney Swain argues that the hearing justice erred in finding that Rule 11 applies to an attorney who had not signed the document in question. Furthermore, Swain contends that, even if Rule 11 did apply in this case, the hearing justice nevertheless erred in imposing a sanction against him. Attorney Swain asserts that the hearing justice erred in sanctioning counsel for conduct that was not willful misconduct and was not proscribed by any statute, rule, or decisional authority. Moreover, Attorney Swain argues that the hearing justice erred in declining to find that disclosed drafting assistance to pro se litigants is a generally accepted practice nationwide and, therefore, should not have been the basis for sanctions. In addition, Attorney

---

[8] This Court has articulated that, "[a]t a minimum, due process requires that notice be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Resendes v. Brown, 966 A.2d 1249, 1254 (R.I. 2009) (quoting Flynn v. Al-Amir, 811 A.2d 1146, 1151 (R.I. 2002)). Attorney Vacca received a written letter from the hearing justice, providing notice that his attendance was required to "determine [his] representation of Mr. Pichette." Further, the letter set forth more particularized grounds for the hearing, such as:

> "whether or not preparation of pleadings without formally entering your appearance on behalf of the litigant is allowed by Rhode Island law; whether or not Rules of Professional Conduct have been violated; whether or not the Rules of Civil Procedure (Rule 11) have been violated; and whether or not sanctions should be imposed."

This notice was sufficiently detailed that Vacca should have known that the way in which he came to represent Pichette—through Pichette's relationship with Morgan Drexen—would be explored at the hearing. Accordingly, we are satisfied that sufficient due process was afforded to Vacca by the content in this notice and the opportunity to be heard at the hearing.

Swain asserts that the hearing justice also erred in conducting her own independent research outside the record and then using those results to justify the sanction.[9]

## A

## Applicability of Rule 11

This Court is confronted with the question of whether an attorney who engages in ghostwriting—providing drafting assistance to a pro se litigant without disclosing his or her identity to the court either by signing the pleading or entering his or her appearance—violates Rule 11. The practice of attorney ghostwriting is one form of limited-scope representation or unbundled legal services[10] that has emerged out of the current evolving reality that many litigants necessarily proceed without counsel because they cannot afford full representation. Although much has been said concerning attorney ghostwriting by federal courts, state ethics committees, and the legal profession generally, this Court has not yet spoken on this issue. We view the ethical and procedural issues associated with ghostwriting—and, more broadly limited-scope representation—to be of great import for the bench and bar. Consequently, this Court has carefully traversed both the federal and state landscape of the law on ghostwriting before rendering this opinion.

The threshold issue for this Court is to determine whether, as the hearing justices concluded, the text of Rule 11 applies to counsel who may have provided some form of limited representation that did not include either their signature on a pleading or an entry of appearance

---

[9] After careful review of the record, we fail to see how the hearing justice erred in this respect because she did not make any factual findings based solely on this outside research in these decisions. See discussion in footnote 7, supra.

[10] The American Bar Association describes the "unbundling" of legal services as occurring when "a lawyer performs only specific, limited tasks instead of handling all aspects of a matter." ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 07-446 at 1 (May 5, 2007).

filed with the trial court. Rule 11, as it was styled prior to November 2014,[11] states in relevant part:

> "Every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address and telephone number shall be stated. * * * The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, any appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

This rule is based upon the 1983 version of Rule 11 of the Federal Rules of Civil Procedure, rather than the more recently amended federal rule. Rule 11 Committee Notes; see Pleasant Management, LLC, 918 A.2d at 218. The plain language of Rule 11 requires that all pleadings, motions, or other papers be signed. This signature certifies to the court that the signer has made "[a] reasonable inquiry to assure that all pleadings, motions and papers filed with the court are factually well-grounded, legally tenable and not interposed for any improper purpose." Pleasant Management, LLC, 918 A.2d at 218 (quoting Mariani v. Doctors Associates, Inc., 983 F.2d 5, 7 (1st Cir. 1993)).

---

[11] Rule 11 of the Superior Court Rules of Civil Procedure was slightly amended in November 2014 as this Court promulgated its Rules Governing Electronic Filing. See Article X of the Supreme Court Rules. The substantive requirements of Rule 11 have not changed; therefore, the recent amendments to Rule 11 do not affect our analysis, infra, in these appeals.

- 13 -

Rule 11 indicates that this signature requirement may be satisfied by either an attorney of record or a party. The difficulty that arises in the ghostwriting context, however, is that, although the party at issue is arguably represented by an attorney, the attorney has neither signed the pleadings nor entered an appearance and is therefore not, at least in the traditional sense, an "attorney of record." The pleadings or other papers, rather, are signed by the ostensibly unrepresented party. The hearing justice who sanctioned Attorneys Taylor Humphrey and Swain stated:

> "While this language might be read to suggest that a non-signing attorney cannot be sanctioned under Rule 11, the [c]ourt finds that this reading runs contrary to the clear intent of Rule 11, which is to enforce an attorney's ethical obligations of candor and honesty in interactions with the tribunal."

The hearing justice interpreted the text of the rule as "set[ting] up a clear dichotomy between 'the person who signed [the paper]' and 'a represented party.'" Thus, the hearing justice concluded that "the proper counterpart to Rule 11's 'represented party,' on whom the court may impose sanctions, is not literally 'the person who signed [the paper],' but rather 'the represented party's attorney.'" Although we appreciate the hearing justice's concerns, we disagree with this expansive interpretation of Rule 11 in the ghostwriting context.

The plain language of Rule 11 does not implicate ghostwriting because it does not address the author or drafter of the documents. Instead, the linchpin of Rule 11 is its signature requirement. This signature provides the vehicle through which courts may reach attorneys or litigants to impose sanctions, if necessary, for misconduct in the submission of signed papers during the litigation process. The United States Court of Appeals for the Second Circuit observed that Rule 11 of the Federal Rules of Civil Procedure does not govern the issue of ghostwriting because only the signature of the "attorney of record" is required, "not a drafting

attorney." In re Fengling Liu, 664 F.3d 367, 372 n.5 (2d Cir. 2011). In Liu, the Second Circuit declined to impose any sanctions on an attorney for her ghostwriting conduct, stating that "[i]n light of this [c]ourt's lack of any rule or precedent governing attorney ghostwriting, and the various authorities that permit that practice, we conclude that [the attorney] could not have been aware of any general obligation to disclose her participation to this [c]ourt." Id. at 372.

The hearing justice in the HSBC action and the Discover Bank action cited a 1971 opinion of the United States Court of Appeals for the First Circuit (First Circuit) as providing "clear and longstanding federal authority" for the imposition of Rule 11 sanctions for ghostwriting. This 1971 opinion, however, only briefly addresses ghostwriting in dictum with a foreboding note about its concerns regarding the practice "with an eye to the future," stating: "What we fear is that in some cases actual members of the bar represent petitioners, informally or otherwise, and prepare briefs for them which the assisting lawyers do not sign, and thus escape the obligation imposed on members of the bar, typified by [Rule 11] * * *." Ellis v. State of Maine, 448 F.2d 1325, 1328 (1st Cir. 1971). We view the First Circuit's acknowledgment that ghostwriting attorneys evade Rule 11 as support for our ultimate opinion that Rule 11 is not applicable to attorneys for the assistance they provided in drafting papers subsequently filed by pro se litigants. Furthermore, a thorough review of this Court's Rule 11 jurisprudence has revealed no instance in which sanctions were imposed for a Rule 11 violation absent the filing of pleadings or other papers signed by an attorney.[12]

---

[12] We pause to note the distinction between the instant set of appeals, in which we are reviewing the imposition of sanctions pursuant to Rule 11, and sanctions that we have affirmed pursuant to the inherent authority of the trial courts. See Lett v. Providence Journal Co., 798 A.2d 355, 365 (R.I. 2002) ("[T]rial courts possess the inherent authority to protect their integrity by sanctioning any fraudulent conduct by litigants that is directed toward the court itself or its processes, as informed by the procedures and sanctions available to the court and to the parties under Rules 11 and 37."); Vincent v. Musone, 574 A.2d 1234, 1235 (R.I. 1990) (noting that the Superior Court

- 15 -

Next, we turn to the issue of whether ghostwriting contravenes the spirit of Rule 11. The hearing justices endeavored to expand the reach of Rule 11 through an analysis based on the spirit of the rule in conjunction with the Rules of Professional Conduct. In our opinion, this analysis affords too broad a construction to Rule 11. The Committee Notes to Rule 11 do not give any suggestion that the rule was intended to cover the author as well as the signer of documents. As many federal courts have astutely noted, Rule 11, and the Federal Rules in general, do not contemplate limited representation. Our version of Rule 11, similar to the federal rule, envisions only a binary concept of representation: either full representation or no representation. However, this formulation of representation often conflicts with the reality of today's legal practice. See Rule 1.2(c); see also Jessica K. Steinberg, In Pursuit of Justice? Case Outcomes and the Delivery of Unbundled Legal Services, 18 Geo. J. on Poverty L. & Pol'y 453, 466 (2011) ("The ethical duties of competence, diligence, and zeal pose challenging issues for a lawyer providing unbundled legal services * * *."). Pursuant to our Rules of Professional Conduct, Rule 1.2(c) authorizes limited-scope representation provided that it is reasonable and accompanied by informed consent.[13] We will discuss Rule 1.2(c) further below as we address the current and future state of limited-scope representation in Rhode Island.

Many federal courts have relied on the intent or the spirit, rather than the letter, of Rule 11 to denounce the practice of ghostwriting. The United States Court of Appeals for the Tenth Circuit reasoned that ghostwriting a pro se party's brief "constitute[d] a misrepresentation to this court by litigant and attorney." Duran v. Carris, 238 F.3d 1268, 1272 (10th Cir. 2001). In reaching that conclusion, the court emphasized the signature requirement of Rule 11, noting that

relied not on Rule 11, but on "its inherent power to fashion an appropriate remedy that would serve the ends of justice in this controversy").

[13] Article V, Rule 1.2(c) of the Supreme Court Rules of Professional Conduct provides: "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."

- 16 -

"[b]esides the imprimatur of professional competence such a signature carries, its absence requires us to construe matters differently for the litigant, as we give pro se litigants liberal treatment, precisely because they do not have lawyers." Id.; see Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (noting that a pro se complaint is held to less stringent standards than those afforded to pleadings drafted by attorneys). The hearing justice in the HSBC action and the Discover Bank action also relied on In re Mungo, 305 B.R. 762, 768 (Bankr. D.S.C. 2003), in which a United States Bankruptcy Court judge described ghostwriting as frustrating the application of Rule 11 "by shielding the attorney who drafted pleadings for pro se litigants in a cloak of anonymity."

Although we might agree with the sentiment expressed by the hearing justice in the HSBC action and the Discover Bank action that "the clear intent of Rule 11 * * * is to enforce an attorney's ethical obligations of candor and honesty in interactions with the tribunal," we draw a distinction between conduct that offends Rule 11 and that which may violate one of the Rules of Professional Conduct. The hearing justices primarily relied on federal case law that failed to specify how ghostwriting violated Rule 11 beyond general concerns with regard to this practice. For instance, the ghostwriting discussion in Johnson v. Board of County Commissioners For the County of Fremont, 868 F.Supp. 1226, 1231-32 (D. Colo. 1994), and Laremont-Lopez v. Southeastern Tidewater Opportunity Center, 968 F.Supp. 1075, 1078 (E.D. Va. 1997), highlighted two ethical concerns beyond the purview of Rule 11, such as how ghostwriting violates an attorney's duty of candor and constitutes a misrepresentation to the court. We decline to interpret Rule 11 as applying to the drafting assistance provided by these three nonsignatory counsel and, consequently, perceive no violations thereof. Accordingly, we vacate the hearing

- 17 -

justices' imposition of sanctions against Attorney Vacca, Attorney Taylor Humphrey, and Attorney Swain.[14]

## B

### Ghostwriting in Rhode Island

When we ordered these appeals to the plenary calendar for full briefing and argument, we directed each appellant to address whether "'ghostwriting' is permitted under Article V, Rule 1.2(c) of the Supreme Court Rules of Professional Conduct." The Rhode Island Attorney General and the Rhode Island Bar Association accepted our invitation to submit briefs as amici curiae, and we also allowed an amicus brief to be filed on behalf of Certain Advisory Board Members of the Pro Bono Collaborative (PBC).

All three appellants contend that ghostwriting is permitted pursuant to Rule 1.2(c) because most other states ruling on the issue have recognized ghostwriting as within the scope of permitted limited representation and no court in Rhode Island had previously deemed ghostwriting an unethical practice of law. Swain specifically contends that "[u]nbundled representation – legal advice and the drafting of documents – may not be as effective as full representation, but for many litigants the choice is not between unbundled representation and full representation; it is between unbundled representation and no representation at all."

The preparation or drafting of legal documents on behalf of a client unequivocally constitutes the practice of law and thus is subject to the ethical guidelines set forth in the Rules of Professional Conduct. As we are "responsible for promulgating rules regulating the practice of

---

[14] We acknowledge that a monetary sanction was not imposed on Attorney Vacca. Instead, he was ordered to "provide written notice to each and every pending file in the Rhode Island Superior Court in which he ha[d] [anonymously] prepared * * * pleadings [for self-represented litigants]" within thirty days of the order and to provide proof of compliance with the order. Counsel for Vacca sent a letter to the hearing justice within the one-month deadline asserting that Vacca had complied with the order.

law and ethical standards for the conduct of attorneys admitted to the Rhode Island Bar," In re Petition of Almond, 603 A.2d 1087, 1087 (R.I. 1992), the interpretation and application of these ethical rules fall squarely within the purview of this Court. There is no dispute that attorneys may reasonably limit the scope of their representation. We adopted Rule 1.2 of the American Bar Association (ABA)'s Model Rules of Professional Conduct in February 2007; paragraph (c) allows that "[a] lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." There are myriad ways in which attorneys may limit the scope of their representation pursuant to Rule 1.2, and we acknowledge the current lack of parameters in place to guide attorneys as to the boundary that separates reasonable from unreasonable limited-scope representation.

We also acknowledge that certain activities are currently prohibited by many federal courts, but permitted by many state courts around the country. As we discussed supra, federal courts have historically condemned ghostwriting as a violation of the spirit of Rule 11 of the Federal Rules of Civil Procedure, but an increasing number of state courts are permitting various forms of ghostwriting either through the text or a formal interpretation of their Rules of Professional Conduct.

In a formal opinion issued in 2007, the ABA's Standing Committee on Ethics and Professional Responsibility declared that "[a] lawyer may provide legal assistance to litigants appearing before tribunals 'pro se' and help them prepare written submissions without disclosing or ensuring the disclosure of the nature or extent of such assistance," concluding that the Model Rules of Professional Conduct do not prohibit "undisclosed assistance to pro se litigants, as long as the lawyer does not do so in a manner that violates rules that otherwise would apply to the lawyer's conduct." Formal Opinion 07-446 at 1, 4 (May 5, 2007). The ABA's position explicitly

addressed some courts' concerns that ghostwriting results in a violation of Rule 8.4 (prohibiting lawyers from engaging in conduct that involves dishonesty, fraud, deceit, or misrepresentation). According to the ABA, a lawyer has not been dishonest "[a]bsent an affirmative statement by the client, that can be attributed to the lawyer, that the documents were prepared without legal assistance." Formal Opinion 07-446 at 4. The ABA also addressed the concern that pro se litigants benefit from an unfair advantage when an attorney ghostwrites the written documents filed in court:

> "We * * * believe that permitting a litigant to file papers that have been prepared with the assistance of counsel without disclosing the nature and extent of such assistance will not secure unwarranted 'special treatment' for that litigant or otherwise unfairly prejudice other parties to the proceeding. Indeed, many authorities studying ghostwriting in this context have concluded that if the undisclosed lawyer has provided effective assistance, the fact that a lawyer was involved will be evident to the tribunal. If the assistance has been ineffective, the pro se litigant will not have secured an unfair advantage. * * *
>
> "Because there is no reasonable concern that a litigant appearing pro se will receive an unfair benefit from a tribunal as a result of behind-the-scenes legal assistance, the nature or extent of such assistance is immaterial and need not be disclosed." Id. at 3.

We note that various forms of drafting assistance for pro se litigants are currently permitted by state courts around the country. Some states have expressly provided for complete nondisclosure of attorney assistance. See, e.g., Cal. Rules of Court Title 3, chapter 3, Rules 3.35, 3.37. Some states allow the ghostwriting attorney to remain anonymous, but require a disclosure on the ghostwritten document that legal assistance was provided in the preparation of the document. See, e.g., Mass. Sup. Jud. Ct., Order In Re: Limited Assistance Representation (2009). A third variation is when states permit attorneys to assist pro se litigants with document preparation, but require the fact of assistance and the attorney's name to be disclosed on the document. See, e.g., Colo. R. Prof. Cond. 1.2; Colo. R. Civ. P. 11(b). In Massachusetts, New

Hampshire, and Connecticut, attorneys are permitted to provide anonymous assistance in the preparation of documents that will be filed with the court as long as a notation that the document was "prepared with assistance of counsel" appears on the document. Conn. R. Super. Ct. Practice Book § 4-2: Signing of Pleading; Mass. Sup. Jud. Ct., Order In Re: Limited Assistance Representation (2009); N.H. Super. Ct. R. Civ. P. 17(g).[15]

As a policy, it is clear that allowing attorneys to provide limited-scope representation yields greater access to justice for pro se litigants who are choosing between either no contact with an attorney or some degree of a limited attorney-client relationship. The PBC contends that the current uncertainty surrounding the permissibility of ghostwriting may be inhibiting attorneys who would otherwise be willing to help a pro bono client "if their participation could be limited and targeted in a more predictable and ethically safe manner." The PBC also asserts that allowing attorneys to provide limited drafting assistance to pro se litigants "will serve to encourage pro bono participation by more attorneys, will remove barriers and disincentives to such participation and will promote greater access to justice." The PBC urges that "[g]reater pro bono participation by attorneys * * * will serve to reduce the number of litigants who would otherwise proceed pro se, substantially easing the burden on pro se litigants themselves as well as the burden on Rhode Island courts." We acknowledge the importance of having clear guidelines to assist practitioners navigating these murky waters.

This Court is also mindful of the concerns of some of the members of our legal community. In his amicus brief, the Attorney General, as "the primary enforcer of Rhode Island's consumer protection laws," opposes the practice of ghostwriting in general; he asserts that this area represents an "ethical minefield" for opposing counsel and unfairly leverages the

---

[15] Rule 17(g) of the Rules of the Superior Court of the State of New Hampshire Applicable in Civil Actions requires the disclosure to contain the following phrase: "This filing was prepared with the assistance of a New Hampshire attorney."

benefit of lenient construction that is afforded to pleadings filed <u>pro</u> <u>se</u>. Those who oppose ghostwriting express concerns in four main categories: (1) that those who appear in court <u>pro</u> <u>se</u> after filing pleadings ghostwritten by licensed attorneys may be benefiting from an unfair advantage because courts often construe the content of pleadings filed by <u>pro</u> <u>se</u> litigants more leniently; (2) that those who appear in court <u>pro</u> <u>se</u> after filing pleadings ghostwritten by licensed attorneys are left to discuss either counterclaims or defenses that they do not understand; (3) that, if ghostwriting attorneys are not required to reveal their identity, then they will not be held accountable for potential violations of the Rules of Civil Procedure and Rules of Professional Conduct; and (4) that opposing counsel are placed in a precarious position because they may not communicate directly with a party that they know is represented. <u>See</u> Jona Goldschmidt, <u>In Defense of Ghostwriting</u>, 29 Fordham Urb. L.J. 1145, 1159-65 (2002); Steinberg, 18 Geo. J. on Poverty L. & Pol'y at 465-68; Halley Acklie Ostergard, <u>Unmasking the Ghost: Rectifying Ghostwriting and Limited-Scope Representation with the Ethical and Procedural Rules</u>, 92 Neb. L. Rev. 655, 659-64 (2014).

We have carefully considered the various comments of amici and, pursuant to our general supervisory authority, we declare the policy in our courts to be as follows: An attorney may provide legal assistance to litigants appearing <u>pro</u> <u>se</u> before courts, provided the scope of the attorney's representation is reasonable and the litigant gives informed consent. <u>See</u> Rule 1.2(c). Such consent shall be in writing and shall set forth the nature and extent of the attorney-client relationship. An attorney, however, shall not assist a <u>pro</u> <u>se</u> litigant with the preparation of pleadings, motions, or other written submissions unless the attorney signs the document and discloses thereon his or her identity and the nature and extent of the assistance that he or she is providing to the tribunal and to all parties to the litigation. The attorney shall also indicate on the

written document, if applicable, that his or her signature does not constitute an entry of appearance.

Unless and until we are persuaded otherwise, we believe that full disclosure of the attorney's involvement, albeit limited, is the better practice. An attorney who helps prepare a pleading, motion, or other paper with the expectation that it will be submitted and filed in court on behalf of a pro se litigant should be held to the same standard of good faith as an attorney of record. We are mindful, however, that an attorney's limited representation of a client may raise myriad ethical and procedural concerns. We can envision a host of Rules of Professional Conduct potentially implicated—including Article V, Rule 3.1 of the Supreme Court Rules of Professional Conduct concerning meritorious claims, Rule 3.3 requiring candor toward the tribunal, Rule 3.4 concerning fairness to an opposing party and counsel, Article V, Rule 4.1 of the Supreme Court Rules of Professional Conduct requiring truthfulness in statements to others, Rule 4.3 concerning interactions with unrepresented persons, and Rule 8.4 prohibiting, inter alia, conduct involving dishonesty, fraud, deceit, or misrepresentation. By means of an order to be issued herewith, therefore, we shall invite comment from members of the bench, bar, and public on the subject of limited-scope representation in general and the practice of ghostwriting in particular.

## IV

### Conclusion

For the reasons stated herein, we vacate the orders of the Superior Court imposing sanctions on Attorneys Vacca, Taylor Humphrey, and Swain. The records shall be returned to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**          FIA Card Services, N.A. v. James D. Pichette.

HSBC Bank Nevada, N.A. v. Robert Cournoyer.

Discover Bank v. Diana L. O'Brien-Auty.

**CASE NO:**          No. 2012-272-Appeal.
(PC 11-2911)

No. 2013-156-Appeal.
(PC 11-194)

No. 2013-157-Appeal.
(PC 11-449)

**COURT:**          Supreme Court

**DATE OPINION FILED:**          June 8, 2015

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**          Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Sarah Taft-Carter

Associate Justice Brian Van Couyghen

**ATTORNEYS ON APPEAL:**

For Appellants:  Lauren E. Jones, Esq.

John A. McFadyen, Esq.

For Amicus State of Rhode Island:
Rebecca T. Partington
Department of Attorney General