# PROVIDENCE COUNTY.

PETITION of SIDNEY S. RIDER *et al.* for an Opinion of the Court.

R. published a series of books, all but one of which were copyrighted by him. They were published by subscription, with printed and oral statements that the edition of each book was limited to two hundred and fifty copies and would not be reprinted. Subsequently R. made an assignment of all his property for the benefit of his creditors.

*Held,* that R.'s copyright was subject to his agreement with the subscribers not to print more than two hundred and fifty copies.

*Held,* further, that this number of copies having been printed, the copyright had in it nothing of value to pass to the assignee.

*Held,* further, that, whether the copyright passed under the assignment or not, the assignee could not so sell the copyright as to empower a purchaser to republish the books.

CASE Stated for an opinion of the court under Pub. Stat. R. I. cap. 192, § 23.

*July* 7, 1888. STINESS, J. The case stated shows that between January, 1878, and September, 1887, the petitioner Rider published a series of twenty pamphlets, which he called "Rhode Island Historical Tracts." These tracts consisted of short historical treatises, by various writers, and related, in a general way, to Rhode Island history. Subscriptions were solicited and taken by said Rider, with printed and verbal statements that the edition of each tract to be published was limited to two hundred and fifty copies, and that the same would not be reprinted, whereby the value of said tracts was greatly enhanced. All said tracts, except No. 16, were copyrighted. September 27, 1887, Rider made an assignment of all his property to Augustus S. Miller, for the benefit of creditors. At that time he held the copyrights as above stated. Rider and Miller now concur, in a case stated, according to our statute, in asking the court the following questions:

1. What rights, if any, had said Rider in and to said copyrights at the time of the making of said assignment?

2. Was there anything in said copyrights of value to pass to said assignee?

3. Did the property of said Rider in and to said copyrights pass to the assignee under the general assignment?

4. Has the assignee the right to sell said copyrights, if in his

possession, so as to authorize the purchaser thereof to publish said tracts ?

A copyright gives to the owner the sole right to print, publish, and vend copies of a written composition. It is the grant of an exclusive privilege by the government, for the purpose of protecting and encouraging, like a patent, the product of mental effort. It secures to the author the fruit of his toil, or enables him to dispose of it, with his incidental rights, to a publisher, who thus becomes the proprietor, so called in the statute, Rev. Stat. U. S. 1875, § 4952, p. 966, and as such entitled to protection in the venture of publication. It often, therefore, and perhaps most frequently, happens that the copyright is in the name of the proprietor. He holds it as the representative of property ; the badge of title and of beneficial right. He may enforce his right against all wrongdoers, but as between himself and the author, or others who may have interests, he holds this species of property, just as he would hold any other property, subject to contract obligations. This principle is recognized in the case of *Pulte* v. *Derby*, 5 McLean, 328. The complainant, an author, entered into a written contract with the defendants to publish an edition of his work, and a second edition, if called for, paying him a certain price per copy. A second edition, larger than the first, was issued, and a difference arose about the construction of the contract. The bill prayed for an injunction against further publication. The complainant proposed to publish the work himself, and the defendants, as owners of the copyright, filed a cross bill to enjoin him from so doing. The court sustained the defendants' claim upon the contract, and held that the legal title to the copyright was in the defendants, but only for the purposes of the contract; that it was not assignable, and that the complainant had no right to publish the work in disregard of the contract. The rights of the parties, therefore, standing not on the copyright law, but on a simple contract obligation, it was held that a federal court had no jurisdiction. If the doctrine recognized and applied in this case, that property in a copyright is subject to contract obligations with an author, be correct, and it seems to be well settled, see High on Injunctions, § 713; *Clemens* v. *Estes*, 22 Federal Reporter, 899, we see no reason why it should not also be subject to con-

tract obligations with a purchaser. A title to a copyright carries no authority to break the faith of a contract. Suppose one man should buy the entire edition of a work, at a high price, under an agreement that no more should be printed. Can there be any doubt that, as against his interest, a publisher would be restrained from putting out more copies afterwards, in violation of the agreement? But the principle is the same, whether the purchaser be one or many. We have not found a case which exactly resembles this one. Limited editions are not common. It is not often that authors or publishers are willing to confine the sales of a publication to a given number. When they do so, the publication is usually of a kind which is not adapted to popular sale, but suits the taste of only a small number of buyers, and about which questions of republication, for this reason, do not arise.

The cases most nearly in point are those where a book is advertised to be sold only by subscription. In *Henry Bill Publishing Co.* v. *Smythe*, 27 Federal Reporter, 914, the complainant published Blaine's " Twenty Years in Congress," to be sold only by subscription to single buyers. The defendant surreptitiously procured a few copies, which he offered for sale in his bookstore, and the sale was enjoined. See, also, *Clemens* v. *Estes*, *supra*. If a publisher has the right to enjoin a sale made in violation of the terms of his agreement with his customers, when those terms are known, there must be a corresponding duty on his part to conform to the agreement; and hence it follows that he, too, may be restrained from violating it. In the case before us, subscriptions for the editions were obtained upon the inducement and representation that the tracts would not be reprinted. The publisher, by his own contract, and in consideration of immediate sales, limited his right and privilege under the copyright. Conformably to the contract, he could not himself reprint the tracts; nor can his assignee, for the latter takes no greater right under the assignment than the assignor had when he made it. While the copyright still exists for protection, it has been stripped of its value as property.

As to the third and fourth questions. In *Stephens* v. *Cady*, 14 How. U. S. 528, it was held that a copyright was not subject to sale on execution, but it could be reached by a creditor's bill. The court doubted, however, whether a transfer by sale under a decree

would so pass the title as to protect a purchaser, unless by a conveyance in conformity with the statute. We do not think it is necessary to pass upon these questions, inasmuch as, on the grounds we have above stated, the assignee can have but a naked, legal title, if he has any. Our reply to the several questions is, that Rider's right in the copyright was subject to his agreement with his subscribers not to publish more than two hundred and fifty copies of each of said tracts; that, having done this, the copyright has nothing in it of value to pass to his assignee; that, whether the property of said Rider in said copyright has passed under the assignment or not, the assignee has not the right to sell said copyright so as to authorize the purchaser thereof to publish said tracts.

*Francis W. Miner*, for Rider.

*Augustus S. Miller*, *pro se ipso.*