| | | |
|---|---|---|
| Rhode Island Construction Services, Inc. | : | No. 2009-374-Appeal. |
| | | (KC 08-646) |
| v. | : | |
| Harris Mill, LLC. | : | |

| | | |
|---|---|---|
| Rhode Island Construction Services, Inc. | : | No. 2010-397-Appeal. |
| | | (KC 08-646) |
| v. | : | |
| Harris Mill, LLC. | : | |

| | | |
|---|---|---|
| Thomas Lonardo & Associates, Inc. | : | No. 2010-422-M.P. |
| | | (KC 07-1025) |
| v. | : | |
| Rhode Island Construction Services, Inc. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Rhode Island Construction Services, Inc.   :   No. 2009-374-Appeal.
                (KC 08-646)

             v.           :

    Harris Mill, LLC.         :


Rhode Island Construction Services, Inc.   :   No. 2010-397-Appeal.
                (KC 08-646)

             v.           :

    Harris Mill, LLC.         :


    Thomas Lonardo & Associates, Inc.     :   No. 2010-422-M.P.
                (KC 07-1025)

             v.           :

Rhode Island Construction Services, Inc.   :


Present:  Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The constituent elements of this consolidated appeal to this Court are as follows: a petition for certiorari filed by Thomas Lonardo & Associates, Inc. in a mechanics' lien case and two appeals taken by the same corporation in connection with a separate receivership action.  We must decide whether the motion justice in the Superior Court abused his discretion when he allowed Petra Finance, LLC to file an untimely statement of claim

in the mechanics' lien action. Because Petra failed to set forth any evidence tending to show that its untimely filing was the result of "excusable neglect," we reverse the motion justice's ruling.

# I

## Facts and Travel

On October 6, 2006, Rhode Island Construction Services, Inc. (RICS) purchased real estate located at 618 Main Street in Coventry (the property). RICS planned on transforming an old mill complex on the property into a mixed-use development (the project). In connection with the financing of its purchase of the property, RICS executed a note in the principal amount of $1,456,000 to Zurich Mortgage Solutions, LLC (Zurich); the note was secured by a mortgage on the property. On October 20, 2006, Zurich recorded the mortgage in the land evidence records of the Town of Coventry. On that same day, American Residential Equities, LLC (ARE) purchased the note and mortgage from Zurich. ARE did not, however, immediately record the assignment of the mortgage.

Meanwhile, on September 12, 2006, Thomas Lonardo & Associates, Inc. (TLA) entered into a contract with RICS to provide architectural and engineering services for the project. Over a year later, TLA recorded two documents in the land evidence records in Coventry related to its work on the project: (1) a "Notice of Intention to do Work or Furnish Materials, or Both" (recorded on September 14, 2007) and (2) a notice of lis pendens (recorded on September 18, 2007).[1] Also on September 18, TLA filed a petition to enforce its mechanics' lien in the Superior Court for Kent County. In that petition, TLA alleged that RICS owed $778,112.67 for

---

[1] Pursuant to the mechanics' lien statute, a claimant must record a notice of intent and a notice of lis pendens in order to perfect the claimant's lien. See G.L. 1956 §§ 34-28-4; 34-28-7; 34-28-10.

- 2 -

"professional architectural services rendered" on the project. At the time TLA filed its petition, ARE still had not recorded the October 20, 2006 assignment from Zurich.

In a letter dated October 4, 2007, TLA notified Zurich (which was still listed as the mortgage holder in the land evidence records) that it had filed the mechanics' lien petition pursuant to G.L. 1956 chapter 28 of title 34. The letter enclosed a mechanics' lien citation issued by the clerk of the Superior Court. The citation informed Zurich that it should respond to the mechanics' lien petition "on or before the 26th day of October 2007." The October 4 letter also advised Zurich "to make whatever claim it deem[ed] appropriate * * * to protect its interest in connection with" the mechanics' lien litigation.

Pursuant to § 34-28-16(a), claimants with an interest in the property were required to enter an appearance in TLA's mechanics' lien litigation within twenty days of October 26, 2007 (the return date provided for in the mechanics' lien citation) in order to preserve the priority of their claims. If the claimants failed to enter an appearance, their claims would be "subordinated to the claim of" TLA.[2] See § 34-28-16(a). Nothing was filed with the court by any claimant within those twenty days.

Months later, on February 4, 2008, ARE finally recorded the October 20, 2006 assignment of the mortgage. Ten days later, on February 14, 2008, Petra purchased the note and mortgage from ARE. Petra waited until March 20, 2008 to record the assignment.

---

2      Section 34-28-16(a) provides, in pertinent part, that a
> "mortgage * * * shall be subordinated to the claim of the plaintiff, and persons claiming liens pursuant to this chapter, and any other person having any mortgage, attachment, or other lien or encumbrance who have entered an appearance as a party in the cause, unless the person shall within twenty (20) days after the return day, or within such other time as may be allowed by the [S]uperior [C]ourt pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure enter an appearance as a party in the cause commenced by the complaint * * *."

Meanwhile, on March 19, 2008, the court entered a stipulated consent order signed by both RICS and TLA in the mechanics' lien litigation. At that point, no other claimants had filed a response to TLA's petition. The consent order stated, inter alia: (1) that TLA's contract with RICS was "legally valid, binding and enforceable"; (2) that TLA had performed "the prescribed scope of work described in the [c]ontract, and further, [had] substantially performed in accord with the terms and conditions as set forth in said [c]ontract"; and (3) that TLA was "currently due and owing [$778,112.67] * * * for work performed under the [c]ontract." The consent order also "acknowledge[d]" that TLA's mechanics' lien was "a valid lien and valid in amount."

On May 12, 2008, RICS conveyed the property to Harris Mill, LLC. The next day, RICS filed a petition in the Superior Court for Kent County, requesting that the court place Harris Mill and the property into receivership.[3] Petra appeared at hearings on May 13 and 14 concerning the appointment of a receiver. According to the affidavit of Petra's consultant, David Lloyd Merrill, Petra first learned of TLA's mechanics' lien petition during those receivership hearings.[4] The court issued an order appointing a temporary receiver on May 14. In that order, the court also stayed all judicial proceedings "against [Harris Mill] or any of its property."

On July 30, 2008 (some two-and-a-half months after it learned of the mechanics' lien proceedings), Petra finally entered an appearance in that litigation; it filed a motion to file an answer and statement of claim out of time. TLA objected, and the court conducted a hearing on Petra's motion on September 19, 2008.

---

[3]    The receivership petition indicates that Rhode Island Construction Services, Inc. was the sole member of Harris Mill, LLC.

[4]    The affidavit of Petra's consultant, David Lloyd Merrill, was filed in connection with the mechanics' lien proceedings.

On November 7, 2008, the court in the mechanics' lien litigation issued a written decision granting Petra's motion to file its answer and statement of claim out of time. The motion justice recognized that § 34-28-16 allows the Superior Court to restore late claims in mechanics' lien actions if the claimant can show that its failure to file was due to "excusable neglect" as referenced in Rule 60(b) of the Superior Court Rules of Civil Procedure. The motion justice found that Petra acted "quickly and diligently" once it received notice of the mechanics' lien proceedings and that Petra's failure to file a timely claim "was not the result of its carelessness, inattention or willful disregard." On the basis of those findings, the court granted Petra's motion to file its answer and statement of claim out of time.

On September 10, 2009, the property was sold through the receivership action at a public auction; Petra was the highest bidder, and the order authorizing the sale was entered on September 28, 2009, nunc pro tunc to July 30, 2009. On September 29, 2009, TLA filed a notice of appeal[5] from that order. On October 19, 2010, the court in the receivership action entered an "Order Accepting and Approving Permanent Receiver's Second and Final Report and Request for Fees." TLA also filed a notice of appeal from that order.

On December 1, 2010, TLA filed a petition for a writ of certiorari with respect to the mechanics' lien proceedings. On March 9, 2011, this Court entered an order granting the writ and consolidating the three appeals.

During oral argument before this Court, the parties informed the Court that they had entered into an agreement which laudably simplifies much of the procedural complexity involved in this consolidated appeal. The agreement—which the parties submitted to the Court—acknowledges that Petra was the successful bidder for the property at the receivership auction on

---

[5] TLA filed its appeal pursuant to G.L. 1956 § 9-24-7, which allows for a party to appeal from a court order authorizing the sale of real property.

September 10, 2009. The agreement further provides that, at the closing of the sale, Petra would "deposit * * * $200,000.00 into escrow * * * pending the resolution of" this consolidated appeal. The parties also agreed that, if "the priority of [TLA's] Mechanic's Lien is restored, then * * * TLA shall be entitled to the Escrowed Funds." Similarly, the agreement states that, if "the priority of [TLA's] Mechanic's Lien is not restored, then, [Petra] shall be entitled to the Escrowed Funds."

## II

### Standard of Review

In a mechanics' lien action, a motion justice may grant a motion to submit a claim out of time "as may be allowed by" Rule 60(b). Section 34-28-16(a). Accordingly, a decision to grant such relief "is addressed to the [motion] justice's sound judicial discretion and will not be disturbed on appeal, absent a showing of abuse of discretion." Keystone Elevator Co. v. Johnson & Wales University, 850 A.2d 912, 916 (R.I. 2004) (internal quotation marks omitted).

## III

### Analysis

While the procedural history of this case is rather labyrinthine, the issue before us is narrow. TLA argues that the motion justice committed reversible error when he allowed Petra to file its answer and statement of claim in the mechanics' lien action out of time. Specifically, TLA contends that Petra did not establish that its failure to file a timely statement of claim was the result of "excusable neglect." We agree with TLA.

Section 34-28-16(a) provides that, in a mechanics' lien action, a mortgagee's claim "shall be subordinated to the claim of the [mechanics' lien] plaintiff" if the mortgagee fails to enter a timely appearance. The mortgagee must enter its appearance "within twenty (20) days after the

- 6 -

return day [provided for in the mechanics' lien citation], or within such other time as may be allowed by the [S]uperior [C]ourt pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure." Rule 60(b) provides, in pertinent part, that a court "may relieve a party * * * from a final judgment, order, or proceeding" if that party can demonstrate "excusable neglect." The burden of proving excusable neglect is on the moving party. Reyes v. Providence Place Group, L.L.C., 853 A.2d 1242, 1248 (R.I. 2004).

In this case, it is undisputed that Petra did not file an answer to the petition within twenty days of October 26, 2007 (the return date provided for in the mechanics' lien citation); it did not do so until July 30, 2008. Nevertheless, the motion justice held that Petra's failure to file a timely statement of claim was the result of "excusable neglect" as that term is used in the Rule 60(b) context. The court therefore granted Petra's motion and allowed it to file its statement of claim 278 days late—thereby restoring the mortgage's priority over TLA's mechanics' lien.

In our opinion, the motion justice committed reversible error when he found that the failure to submit a timely statement of claim was the result of Petra's excusable neglect. This Court has stated that "unexplained neglect, standing alone and without more," is not enough for a party to be granted relief under Rule 60(b). Iddings v. McBurney, 657 A.2d 550, 553 (R.I. 1995). Rather, a party must demonstrate "excusable neglect," which is "a failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident * * *." The Astors' Beechwood v. People Coal Co., 659 A.2d 1109, 1115 (R.I. 1995) (internal quotation marks omitted); see also Boranian v. Richer, 983 A.2d 834, 840 (R.I. 2009) ("[T]o establish excusable neglect, the party generally must show that the circumstances that caused the party to miss a deadline were out of that party or counsel's

- 7 -

control."). The inquiry into whether there has been excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pleasant Management, LLC v. Carrasco, 960 A.2d 216, 225 (R.I. 2008) (internal quotation marks omitted).

Petra purchased the note and mortgage from ARE on February 14, 2008—almost five months after TLA filed the mechanics' lien petition and more than three months after the deadline to file a statement of claim had passed. Had Petra carried out even the most cursory due diligence before it purchased the mortgage, it would have discovered that the property was implicated in the mechanics' lien action. A title search would have revealed the notice of lis pendens—a document recorded specifically "to warn any person subsequently dealing with the title to the land." See G.L. 1956 § 9-4-9(a). As we have previously stated:

> "A notice of lis pendens is filed on the public record for the purpose of warning all interested persons that the title to the subject property is being disputed in litigation and that, therefore, any person who subsequently acquires an interest in the property does so subject to the risk of being bound by an adverse judgment in the pending case." Montecalvo v. Mandarelli, 682 A.2d 918, 924 (R.I. 1996).[6]

Petra did not present any evidence that it had researched the status of the mortgage or the property prior to its purchase. In the affidavit filed by Petra's consultant, he freely admitted that Petra "had absolutely no knowledge of [the mechanics' lien] proceeding prior to its acquisition of the Note and Mortgage." The consultant's affidavit, however, failed to offer any reason as to why Petra should be entitled to relief for "excusable neglect" based on this ignorance.

---

[6] Cf. George v. Oakhurst Realty, Inc., 414 A.2d 471, 474 (R.I. 1980) ("The term 'lis pendens' literally means litigation or suit pending, * * * and its effect has been summed up in these words: that he who purchases property pending a suit in which the title to it is involved, takes it subject to the judgment or decree that may be passed in such suit against the person from whom he purchases." (internal quotation marks omitted)).

Instead, it appears that Petra was willing to take its chances by purchasing a $1,456,000 mortgage without determining whether there were competing claims to the underlying property. It is a basic legal principle that an assignee "takes no greater right under [an] assignment than the assignor had when he made it." In re Rider, 16 R.I. 271, 273, 15 A. 72, 73 (1888); see also 6 Am. Jur. 2d Assignments § 108 at 228 (2008) ("As a general rule, an assignee takes the subject of the assignment with all the rights and remedies possessed by or available to the assignor."). ARE was the owner of the mortgage at the time of the expiration of the twenty-day period that is set forth in § 34-28-16(a). Accordingly, when Petra purchased the mortgage from ARE, it purchased an asset that had already lost its priority. See In re Rider, 16 R.I. at 273, 15 A. at 73. We perceive no equities in this case that would justify endowing Petra with a more valuable asset than the one it purchased from ARE—especially when information about the value of the mortgage would have been readily available had Petra performed a title search. See Pleasant Management, LLC, 960 A.2d at 225 (stating that the inquiry into whether there has been excusable neglect "is at bottom an equitable one" (internal quotation marks omitted)).

We have held that a party cannot demonstrate excusable neglect based on its "own carelessness, inattention, or willful disregard of the process of the court." The Astors' Beechwood, 659 A.2d at 1115 (internal quotation marks omitted). The outcome of this case might well have been different if Petra had been able to show that, before purchasing the mortgage, it had conducted a title search and, for some reason, that search failed to reveal the notice of lis pendens. If that were the case, Petra would be in a much better position to contend that it purchased the mortgage with a reasonable belief that the mortgage's priority was intact. But there is no such evidence; instead, Petra's failure seems to have been based on its "own

carelessness, inattention, or willful disregard of the process of the court." See id. (internal quotation marks omitted).

The motion justice focused on Petra's behavior <u>after</u> its risky purchase, noting that it acted "quickly and diligently" once it received notice of the mechanics' lien. The motion justice further stated that he was "hard-pressed to find any neglect on Petra's part at all." Likewise, Petra argues that, "[a]t every turn <u>after acquiring its interest</u> in the Property, Petra diligently sought to protect its rights." (Emphasis added.)

The motion justice and Petra agree that Petra acted diligently <u>after</u> it purchased the mortgage. But, at that point, the mortgage had already lost its priority—a fact that Petra should have known. By its motion to file an answer and statement of claim out of time, Petra was essentially seeking to protect a right that it never had in the first place. See <u>In re Rider</u>, 16 R.I. at 273, 15 A. at 73 (noting that an assignee "takes no greater right under [an] assignment than the assignor had when he made it"). The motion justice's ruling awarded Petra a more valuable asset (<u>viz.</u>, a mortgage with its priority intact) than the asset that Petra <u>should have known</u> it was purchasing (<u>viz.</u>, a mortgage subordinate to TLA's mechanics' lien). In our opinion, there is nothing in the record to support the motion justice's determination that Petra had made a showing of "excusable neglect."[7]

---

[7] Petra also argues that "TLA's appeal must be dismissed as it does not have a valid mechanic's lien pursuant to" § 34-28-7. In our opinion, this argument is unavailing for the same reasons as have been discussed in the body of this opinion. Pursuant to § 34-28-14, "all persons who have [a] recorded * * * mortgage" are required to appear "on [the return date provided for in the mechanics' lien citation] and show cause, if any they have, why the [petitioner's] lien should not be allowed and enforced for the amount claimed." Neither Zurich nor ARE—the prior mortgage holders—entered an appearance to challenge TLA's mechanics' lien before the return date (<u>viz.</u>, October 26, 2007). In fact, Petra did not contest the validity of the mechanics' lien until September 26, 2008, when it filed a supplemental memorandum of law in support of its motion to file a statement of claim out of time. We perceive nothing in the record that would persuade us to entertain Petra's untimely argument. See <u>In re Rider</u>, 16 R.I. 271, 273, 15 A. 72,

**IV**

**Conclusion**

For the reasons set forth in this opinion, we reverse the Superior Court's grant of Petra's motion to file an answer and statement of claim out of time, thereby restoring the priority of TLA's mechanics' lien. The records in this case may be returned to the Superior Court.

Justice Indeglia did not participate.

---

73 (1888) (noting that an assignee "takes no greater rights under [an] assignment than the assignor had when he made it").



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**     Rhode Island Construction Services, Inc. v. Harris Mill, LLC.

Rhode Island Construction Services, Inc. v. Harris Mill, LLC.

Thomas Lonardo & Associates, Inc. v. Rhode Island Construction Services, Inc.

**CASE NO:**     No. 2009-374-Appeal.
(KC 08-646)

No. 2010-397-Appeal.
(KC 08-646)

No. 2010-422-M.P.
(KC 07-1025)

**COURT:**     Supreme Court

**DATE OPINION FILED:**     June 18, 2013

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**WRITTEN BY:**     Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**     Kent County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Jeffrey A. Lanphear

**ATTORNEYS ON APPEAL:**

For Thomas Lonardo & Associates, Inc.:  John A. Dorsey, Esq.

For Petra Finance, LLC:  Michael J. Polak, Esq.