June 25, 2025

**Supreme Court**

No. 2023-372-Appeal.
(NP 16-265)

(Dissents begin on Page 22)

Alison Glassie, in her capacity as :
Executrix of the Estate of Jacquelin
C. Glassie and as Assignee of Wells
Fargo Bank, N.A., Trustee of the
Jacquelin Caffrey Glassie Trust II

v. :

Paul Doucette, in his capacity as :
Executor of the Estate of Donelson
C. Glassie, Jr.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Alison Glassie, in her capacity as      :
Executrix of the Estate of Jacquelin
C. Glassie and as Assignee of Wells
Fargo Bank, N.A., Trustee of the
Jacquelin Caffrey Glassie Trust II

v.                    :

Paul Doucette, in his capacity as      :
Executor of the Estate of Donelson
C. Glassie, Jr.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The defendant, Paul Doucette, in his

capacity as Executor of the Estate of Donelson C. Glassie, Jr., appeals from a

November 14, 2023 order of the Superior Court, which granted the plaintiff's motion

to dismiss the defendant's appeal from a judgment on a jury verdict.[1]  The defendant

contends that the trial justice abused his discretion when he granted the plaintiff's

---

[1]     The plaintiff is Alison Glassie, who commenced this civil action in her
capacity as Executrix of the Estate of Jacquelin C. Glassie and as assignee of Wells
Fargo Bank, N.A. (Wells Fargo), Trustee of the Jacquelin Caffrey Glassie Trust II.

- 1 -

motion to dismiss for the reason that the defendant had failed to timely order transcripts and did not convince the trial justice that said failure was the result of excusable neglect.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and after carefully reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.

For the reasons set forth in this opinion, we affirm the order of the Superior Court.

## I

## Facts and Travel

## A

## The Original Claim and Appeal

The factual background of this case is described in our opinion in *Glassie v. Doucette*, 157 A.3d 1092 (R.I. 2017), which dealt with an earlier issue in this case. Accordingly, we shall recount here only the facts necessary for our analysis of the issues relevant to this appeal.

Jacquelin Glassie was the youngest child of Donelson and Marcia Sallum Glassie.[2] On August 11, 1993, Donelson established the Jacquelin Caffrey Glassie Trust II (the Trust). According to the property settlement agreement that was reached at the time of Donelson and Marcia's divorce, Donelson was to fund the Trust so that it would provide benefits that would be substantially similar to the benefits which other trusts provided for Jacquelin's sisters, Alison Glassie and Georgia Glassie. Following the death of Donelson on February 3, 2011, Jacquelin filed a claim against his estate, alleging that Donelson had breached the above-referenced agreement by failing to adequately fund the Trust. Her claim was disallowed by the executor, Mr. Doucette, and it was referred to the Superior Court in accordance with the provisions of G.L. 1956 § 33-11-16.

On June 25, 2012, Jacquelin filed a complaint against the estate in the Superior Court. In due course, Mr. Doucette, in his capacity as executor, proceeded to file a counterclaim, alleging that Jacquelin had forfeited any interest as a beneficiary by virtue of an *in terrorem* clause in Donelson's will. Shortly after the complaint was filed, Jacquelin died unexpectedly. Jacquelin's sister, Alison, was appointed executrix of Jacquelin's estate, and she was substituted in that capacity as the party plaintiff in this case. Summary judgment was subsequently granted in favor of the

---

[2] Because several individuals involved in this case share the same last name, they usually will be referred to herein by their first names. No disrespect is intended.

- 3 -

estate on the grounds that only a trustee may institute an action on behalf of the beneficiaries of a trust. On appeal, this Court held that the proper plaintiff in the action should have been the Trustee of the Trust, Wells Fargo Bank, N.A. (Wells Fargo); and it further held that Alison, as executrix of Jacquelin's estate, did not have the requisite standing. *Glassie*, 157 A.3d at 1100.

## 1. The Assignment

On January 7, 2016, in the context of a partial settlement of litigation taking place in the state of Utah, Wells Fargo assigned to Alison any "claims that the Trustee may possess, in its capacity as Trustee of the Trust, against defendant arising out of an alleged breach of Donelson's obligations under a property settlement agreement dated July 1, 1993." *Glassie*, 157 A.3d at 1096 n.6 (brackets omitted). In May of 2016, Alison, as executrix of Jacquelin's estate and assignee of the Trustee (Wells Fargo), petitioned the Newport Probate Court for permission to file a claim against the estate out of time. The petition was denied by the Probate Court, and Alison appealed to the Superior Court. After considering the contentions of the parties, the Superior Court determined that Alison had satisfied her burden of establishing excusable neglect and that she should be allowed to pursue her claim against Donelson's estate out of time. On April 15, 2022, Alison filed an amended complaint in the Superior Court, alleging substantially the same claims as had been set forth in the original complaint. Mr. Doucette again asserted a counterclaim

- 4 -

alleging that, because of an *in terrorem* clause in Donelson's will, Alison, both in her individual capacity[3] and as executrix of Jacquelin's estate, had forfeited any interest under Donelson's will.

## 2. The Trial

On March 7, 2023, a jury trial commenced. The trial concluded on March 17, 2023, when the jury returned a verdict in favor of plaintiff. The jury found that "Donelson [had] breached his obligations contained in the Property Settlement Agreement to fund [the Trust]." Additionally, the jury found that the estate of Jacquelin Glassie did not forfeit "any bequest it was entitled to pursuant to Donelson Glassie's Will." The jury awarded plaintiff $1,164,138.43 in damages. Judgment entered in favor of plaintiff in the amount of $2,856,572.45, which included prejudgment interest; judgment also entered in favor of plaintiff on defendant's counterclaim.

Subsequently, several post-trial motions were filed by the parties. The plaintiff filed a motion to amend her complaint to conform to the evidence presented at trial. The defendant filed a renewed motion for judgment as a matter of law, or, in the alternative, a motion for a new trial and/or remittitur. The trial justice granted plaintiff's motion and denied defendant's motions.

---

[3]    Mr. Doucette's counterclaim against Alison in her individual capacity was dismissed prior to trial.

**B**

**The Instant Appeal**

**1. The Request for Transcripts**

On June 7, 2023, defendant filed a notice of appeal;[4] the notice expressly indicated that transcripts would be ordered.  The defendant's request for transcripts was not docketed until August 21, 2023—seventy-four days after the notice of appeal was filed.  Over a month later, on September 26, 2023, defendant paid for the transcripts.  On October 10, 2023, plaintiff moved in the Superior Court to dismiss defendant's appeal for failure to have timely ordered the transcripts and for failure to have followed the proper procedure in seeking an extension of time for the transmission of the record.

On October 3, 2023, defendant filed a motion with *this* Court seeking an extension of time for transmission of the record to December 31, 2023, stating that the stenographer had indicated that the transcripts would not be ready before mid-December.  The plaintiff objected to defendant's motion, noting that defendant had ordered the transcripts beyond the deadline established by Article I, Rule 35(e) of the Supreme Court Rules of Appellate Procedure.  The plaintiff further pointed out that, pursuant to Rule 11(f) of the Supreme Court Rules of Appellate Procedure,

---

[4]    We shall on occasion refer to this June 7, 2023 appeal as "the substantive appeal."

defendant should have addressed his motion to the trial court. The plaintiff also noted that defendant had failed to send a copy of the motion to the Superior Court Administrator, as is required by Rule 11(c). By an order dated November 6, 2023, this Court held defendant's motion in abeyance pending a decision in the Superior Court on plaintiff's motion to dismiss the appeal.

The completed transcripts relative to the substantive appeal were filed in the Superior Court on November 3, 2023, and the case was certified to this Court on November 6, 2023. The appeal was docketed in this Court on November 14, 2023.

## 2. The Motion to Dismiss Defendant's Appeal

A hearing on plaintiff's motion to dismiss the appeal was held in the Superior Court on November 7, 2023. At the conclusion of the hearing, the trial justice found that defendant had failed to provide an adequate explanation that would justify a finding of excusable neglect with respect to his failure to abide by the pertinent rules relative to the timely ordering of the transcripts and the transmission of the record. The trial justice took into consideration defendant's argument that the delay was based on what defendant asserted was his hope that the case would be resolved in mediation and his desire to conserve funds by not having to pay for the transcripts if there were to be a settlement. However, the trial justice ultimately concluded that defendant's argument was meritless and that defendant had not borne his burden of proving excusable neglect. The trial justice expressly found that the argument about

- 7 -

defendant's wish to avoid having to spend money for the transcripts in the hope that there would be a successful mediation was especially unconvincing when viewed against the background of the vast amount of time and money that had already been expended in the litigation of this case and in the litigation of other cases closely related to this one. As a result of these findings, the trial justice granted plaintiff's motion to dismiss defendant's substantive appeal. An order to that effect entered on November 14, 2023; and, on the same day, defendant filed a notice of appeal. It is the latter appeal that is presently before us.

## II

### Issue on Appeal

On appeal, defendant contends that the trial justice's decision to grant plaintiff's motion to dismiss the substantive appeal due to the fact that defendant had ordered the transcripts after the deadline set forth in Rule 35(e) was an abuse of discretion.

## III

### Standard of Review

This Court has previously stated that "[i]n reviewing a trial court's dismissal of an appeal, we shall reverse the trial court's decision only upon a finding that the motion justice abused his or her discretion." *Pelosi v. Pelosi*, 50 A.3d 795, 798 (R.I. 2012) (internal quotation marks omitted); *see also Sentas v. Sentas*, 911 A.2d 266,

269 (R.I. 2006). We have emphasized that the abuse of discretion standard gives extreme deference to the trial court's determination. *See State v. Werner*, 831 A.2d 183, 204 (R.I. 2003) ("The standard of abuse of discretion is one that gives extreme deference to the trial justice's determination. Upholding a trial court's discretionary ruling does not imply that the appellate court necessarily would have ruled in the same manner as the original determination."); *see also Harodite Industries, Inc. v. Warren Electric Corporation*, 24 A.3d 514, 533 (R.I. 2011).[5]

It is clearly established that the trial court has the authority to dismiss an appeal for failure to comply with the rules regarding the ordering of transcripts. *Pelosi*, 50 A.3d at 798. However, we have also made it clear that "a court should not dismiss an appeal for failure to perfect the record if the inability of the appellant to cause timely transmission of the record is due to causes beyond his control or to circumstances which may be deemed excusable neglect." *Id.* (internal quotation marks and emphasis omitted); *see Small Business Loan Fund Corporation v. Gallant*, 795 A.2d 531, 533 (R.I. 2002). We have stated that "[a] litigant asserting excusable neglect must demonstrate extenuating circumstances sufficient to excuse his or her noncompliance with the court rules." *Sentas*, 911 A.2d at 270. And we

---

[5]     *See generally* Roscoe Pound, *Discretion, Dispensation and Mitigation: The Problem of the Individual Special Case*, 35 N.Y.U. L. Rev. 925, 926 (1960) ("Discretion is an authority conferred by law to act in certain conditions or situations in accordance with an official's * * * own considered judgment and conscience.").

have also indicated that "[t]he existence of excusable neglect is a question of fact to be proven by evidence." *Vitale v. Elliott*, 120 R.I. 328, 331, 387 A.2d 1379, 1381 (1978).

In addition, we have clearly stated that, in order for a litigant to establish excusable neglect, he or she must show "that the neglect * * * was occasioned by some extenuating circumstances of sufficient significance to render it excusable." *Fields v. S. & M. Foods, Inc.*, 105 R.I. 161, 162, 249 A.2d 892, 893 (1969); *see Boranian v. Richer*, 983 A.2d 834, 840 (R.I. 2009) ("[T]o establish excusable neglect, the party must generally show that the circumstances that caused the party to miss a deadline were out of that party or counsel's control."); *see also UAG West Bay AM, LLC v. Cambio*, 987 A.2d 873, 880 (R.I. 2010).[6]

## IV

## Discussion

Although the show cause order that was entered on April 19, 2024 is silent as to specific issues that the parties should further address on appeal, the parties have indicated that, at the prebriefing conference, they were directed to address the

---

[6] In connection with the instant case, we see special significance in the requirement that the circumstances that might trigger a finding of excusable neglect must be out of the control of the party claiming excusable neglect or that party's counsel. *See UAG West Bay AM, LLC v. Cambio*, 987 A.2d 873, 880 (R.I. 2010); *Boranian v. Richer*, 983 A.2d 834, 840 (R.I. 2009). As we emphasize *infra*, that requirement was clearly not met in this case.

- 10 -

question of whether the payment of the judgment by defendant renders this appeal moot. Therefore, we shall briefly explain why we do not believe that mootness resolves the matter on this record.

Our review of the record reveals that questions of fact remain unresolved relating to defendant's actions in the post-jury-verdict phase of this litigation. Counsel for defendant contends that the payment was involuntary, underscoring that he sought to halt the accrual of interest but that he had declined plaintiff's request to withdraw the instant appeal. For her part, counsel for plaintiff emphasizes that defendant had indicated that he would forward to her a "Satisfaction of Judgment." Specifically, the issue of mootness *vel non* would hinge on this Court's determination as to whether defendant's payment of the judgment was voluntary or involuntary. It is clear to us that any meaningful analysis of the possible issue of mootness would require a remand for fact-finding.[7] Moreover, this Court has not yet opined on the issue of what constitutes a voluntary payment of a judgment in this context, and we firmly believe that this is not the record upon which we should undertake that legal analysis. Accordingly, in view of the fact that the only issue that is squarely before us at present pertains to plaintiff's motion to dismiss, we

---

[7] Further fact-finding would obviously extend the duration of this long-pending case, and we see no sufficient reason for taking that path when there is no necessity that we do so. *See Arena v. City of Providence*, 919 A.2d 379, 396 (R.I. 2007) ("It is time for this litigation to end.").

- 11 -

discern no reason to scrutinize the issue of possible mootness, and we will proceed to address the substantive issue on appeal.

**A**

**The Parties' Contentions**

The defendant contends before this Court that the dismissal of his appeal in this case was an abuse of discretion. In pressing this argument, defendant asserts that "this Court has never dismissed an appeal in the circumstances that exist here." To support this contention, defendant relies on this Court's opinions in *Boschetto v. Boschetto*, 183 A.3d 536 (R.I. 2018) (mem.); *Valkoun v. Frizzle*, 973 A.2d 566 (R.I. 2009); and *Armstrong v. Polaski*, 116 R.I. 661, 360 A.2d 558 (1976). In particular, defendant points to these cases as examples of instances where, in defendant's words, this Court "looked beyond strict technical adherence to rule requirements and assessed the overall status of the case, including whether the appellant had taken concrete steps to perfect the appeal."

With respect to the facts of this case, defendant claims that, although his transcript request was not made within the time requirements set forth in Rule 35(e), the request was made within the time allowed for transmission of the record. The defendant specifically asserts that, because "he was acting within the time periods that the *Valkoun* court sanctioned as being consistent with the interest of justice and fairness, [his] crossing of the date for ordering the transcript must be seen as

- 12 -

excusable neglect." In addition, defendant also notes that his "desire for a mediated resolution to the litigation and avoidance of additional litigation expense turned out to have been in vain." Lastly, he emphasizes that the trial justice imposed the ultimate sanction even though the delay at issue was of thirty-one days duration, which defendant does not consider to be of great significance.

In turn, plaintiff contends that the trial justice did not abuse his discretion in dismissing defendant's appeal. The plaintiff points out that, in rendering his decision, the trial justice ultimately rejected defendant's explanations for the untimely transcript request, indicating that he found those explanations to be without merit. The plaintiff further contends that the trial justice's "discretionary decision to dismiss the appeal was properly informed by his knowledge of the lengthy history of the litigation." Lastly, in response to defendant's assertion that "this Court has never dismissed an appeal in the circumstances that exist here," plaintiff replies that defendant "disregards significant factual distinctions between the cases cited in support of that argument and this case."

**B**

**The Pertinent Rules**

Article I, Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure provides that "within twenty (20) days after filing the notice of appeal," the appellant

must order such transcripts of the proceedings "as the appellant deems necessary for inclusion in the record."

Rule 11(a) of the Supreme Court Rules of Appellate Procedure provides:

> "Except as provided for in Rule 35(e) with respect to cases eligible for mediation, the record on appeal, including the transcript necessary for the determination of the appeal, shall be transmitted to the Supreme Court within sixty (60) days after the filing of the notice of appeal unless the time is shortened or extended by an order entered under subsection (c) of this rule."[8]

Rule 11(c) states that the trial court "may extend the time for transmitting the record." The request for extension pursuant to Rule 11(c) "must be made within the time originally prescribed or within an extension previously granted, and the trial court shall not extend the time to a day more than ninety (90) days from the date of filing of the first notice of appeal."[9]

Rule 35(e) extends the time for ordering a transcript to sixty days from the filing of the notice of appeal for cases eligible for mediation; it also extends the time

---

[8]     *See Estate of Mitchell v. Gorman*, 970 A.2d 1, 5 (R.I. 2009).

[9]     Article I, Rule 11(c) of the Supreme Court Rules of Appellate Procedure also provides that, if "the trial court is without authority to grant the relief sought or has denied a request therefor, the Supreme Court may on motion extend the time for transmitting the record or may permit the record to be transmitted and filed after the expiration of the time allowed or fixed." Rule 11(f) further states that "[f]rom the time of the filing of notice of appeal, the Supreme Court and trial courts shall have concurrent jurisdiction to supervise the course of said appeal and to promulgate orders of dismissal of appeal for failure to comply with these rules, either upon motion of a party or upon the court's own motion."

for transmitting the record to sixty days after the transcript has been ordered. Importantly, Rule 35(e) states: "The Rules of Appellate Procedure are not suspended during participation in the Appellate Mediation Program except as expressly provided for herein."

## C

### Analysis

We begin our analysis by first stating that we are unpersuaded that the facts of the instant case are, in actuality, genuinely similar to the facts of the cases relied upon by defendant—*viz.*, *Boschetto v. Boschetto*; *Valkoun v. Frizzle*; and *Armstrong v. Polaski*. This case involves a factual context that differs meaningfully from the factual context of the just-cited cases. For that reason, it is our view that those cases do not have a dispositive precedential value with respect to the instant case. For example, in *Boschetto*, the plaintiff *timely* ordered and paid a substantial sum of money for a partial set of transcripts. *Boschetto*, 183 A.3d at 537. However, Mr. Boschetto had failed to fully comply with Rule 10(b)(1), which sets forth the duties of the appellant in the event that a partial transcript is ordered. *Id.* Upon discovering that he was not in total compliance with the rule, the plaintiff filed a motion for an extension of time to transmit the record to this Court. *Id.* This Court held that the plaintiff's failure to comply with all the requirements of Rule 10(b)(1) "should not have been fatal to [his] appeal." *Id.* at 538. This Court expressly distinguished that

- 15 -

case from prior cases in which the appellants had failed to timely order *any* transcripts. *Id.*

In the instant case, the relevant rules required defendant to order the transcripts no later than August 7, 2023 and to see to it that the record was transmitted to this Court no later than October 6, 2023. However, defendant did not order the transcripts (or even a portion of them) until August 21, 2023 and did not actually pay for the transcripts until September 26, 2023. Unlike the plaintiff in *Boschetto*, who partially complied with the operative rules, it is undisputed that defendant in this case ordered transcripts well beyond the prescribed deadline and asserted as justifications for not complying with the deadlines set forth in the pertinent rules: (1) his hope for a successful mediation and (2) his desire not to have to spend money for transcripts in the event the case were to settle.

We are similarly of the opinion that defendant's reliance on *Valkoun v. Frizzle*, 973 A.2d 566 (R.I. 2009), and *Armstrong v. Polaski*, 116 R.I. 661, 360 A.2d 558 (1976), is also unavailing.

In *Valkoun*, the plaintiff did not timely order the transcript. *Valkoun*, 973 A.2d at 573. The order from which the plaintiff undertook the appeal granted the defendant physical placement of the couple's children and granted the defendant's motion to relocate to North Carolina with the children. *Id.* at 569. This Court held that there was no abuse of discretion in the trial justice's ruling that it would be unfair

to dismiss the plaintiff's appeal and deny his motion for an extension of time. *Id.* at 575. This Court emphasized that the trial justice "noted that plaintiff's motion for an extension of time was timely and that, although plaintiff had not ordered the transcript within the time period provided for in Rule 10(b)(1), it was ordered before the expiration of the sixty-day period within which to transmit the record or file a motion for an extension." *Id.*

In *Armstrong*, the plaintiff had timely ordered a limited part of the transcript. *Armstrong*, 116 R.I. at 662, 360 A.2d at 558. Later, without prior leave of court, the plaintiff filed a complete transcript of the relevant testimony. *Id.*, 360 A.2d at 559. This Court adopted a "broad brush approach" that "authorized the record to be supplemented by an additional transcript provided the party seeking relief has acted in good faith, and that to relieve him from the consequences of his error will not result in a disservice to the interests of justice." *Id.* at 663, 360 A.2d at 559. In applying that standard to the facts of that case, this Court held that it was not persuaded that the "late filing, though perhaps evidencing a lack of an awareness that prior court permission was a requisite, constituted bad faith." *Id.* at 664, 360 A.2d at 559.

It is clear to us that the trial justices' discretionary rulings in both *Valkoun* and *Armstrong* addressed factual circumstances that are materially different from those with which the trial justice in this case was confronted. And, in *Valkoun* and

*Armstrong*, the respective trial justices exercised their discretion in accordance with the unique factual circumstances that confronted them. Accordingly, we view those cases as being plainly distinguishable.

We have scrutinized the record in this case, and we have been unable to perceive any extenuating circumstance of sufficient significance (or indeed of any significance) that would constitute excusable neglect. In fact, it appears that in this case there was no genuine neglect, but rather *a conscious decision* not to abide by the clear mandates of the pertinent rules. The defendant has not pointed to any circumstances that were beyond his control or his counsel's control. *See UAG West Bay AM, LLC*, 987 A.2d at 880; *Boranian*, 983 A.2d at 840. Given such circumstances, the trial justice clearly did not abuse his discretion in granting the motion to dismiss. *See Iddings v. McBurney*, 657 A.2d 550, 553-54 (R.I. 1995). Rather, the trial justice clearly acted in accordance with his own considered judgment.[10]

Accordingly, after carefully reviewing the record in the instant case, we are satisfied that the trial justice did not abuse his discretion in granting plaintiff's motion to dismiss the appeal. *See Hartman v. Carter*, 121 R.I. 1, 4-5, 393 A.2d 1102,

---

[10]   *See* Pound, *supra* note 5, at 929 ("[T]here are * * * today an increasing number of situations where what is to be done or exactly how it is to be done, must be left to the court's individual sense of what is right and just, conscientiously applied.").

1105 (1978) ("[D]iscretion is not exercised by merely granting or denying a party's request. The term 'discretion' imports action taken in the light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having regard for what is right and equitable under the circumstances and the law."); *see also Rhode Island Construction Services, Inc. v. Harris Mill, LLC*, 68 A.3d 450, 455 (R.I. 2013) ("The inquiry into whether there has been excusable neglect is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.") (internal quotation marks omitted).

It is our opinion that, in determining whether defendant's conduct amounted to excusable neglect, the trial justice appropriately evaluated the reasons provided by defendant for failing to timely order the transcripts. Specifically, the trial justice expressly rejected as insufficient defendant's proffered reason that he was attempting to save the estate the cost of preparing the transcripts in the hope that mediation would be successful. The trial justice cited the lengthy travel of this case as well as the previous unsuccessful settlement attempts as reasons for his not being persuaded by defendant's explanation. The trial justice minced no words in that regard, stating:

> "[C]onsidering the amount of money it must have cost to
> litigate this case and the amount of the [judgment] at stake,
> the funds necessary to obtain transcripts amount to a

proverbial 'drop in the bucket.'[11]  It appears to this [c]ourt that the appellant's assertions in this regard are disingenuous."[12]

The trial justice quite pointedly stated that defendant's deliberate decision not to order and pay for the transcripts in a timely manner based upon the financial concerns alluded to by defendant's counsel did not establish excusable neglect.

The trial justice further pointed out that the court had made "every effort to bring this case to trial in a timely manner since it became involved;" and he added that "moving this case forward was a struggle."  The trial justice concluded his decision by noting that the "deadlines are there to move cases forward to resolution and this case has been the perfect example as to why the deadlines are necessary and should be adhered to."  It is clear to us that, in view of the fact that the trial justice had presided over this case for several years, he was well-positioned to assess defendant's proffered explanations, and he was acutely aware of the extensive travel of this case.[13]  Accordingly, it is our view that the trial justice's determination that

---

[11]  In our judgment, the trial justice appropriately took into account the magnitude of the damages in this case as he considered what would be "right and equitable under the circumstances and the law." *Hartman v. Carter*, 121 R.I. 1, 5, 393 A.2d 1102, 1105 (1978).

[12]  The first definition of "disingenuous" in the American Heritage Dictionary reads as follows: "Not straightforward or candid; insincere or calculating * * *." The American Heritage Dictionary of the English Language 518 (5th ed. 2011).

[13]  The unreported Superior Court decision at an earlier stage of this case in *Glassie v. Doucette*, No. NP-2016-0265, 2020 WL 6736278 (R.I. Super. Nov. 6,

defendant's conscious choice not to order the transcripts did not amount to excusable neglect fell squarely within the broad range of his discretion. *See DeBartolo v. DiBattista*, 117 R.I. 349, 353, 367 A.2d 701, 703 (1976) ("To say * * * that the question is addressed to the trial justice's discretion does not mean that his ruling is not reviewable. What it does mean is that the ruling will be sustained provided the discretion has been soundly and judicially exercised, that is, if it has been exercised in the light of reason applied to all the facts and with a view to the rights of all the parties * * * and not arbitrarily or willfully, but with just regard to what is right and equitable under the circumstances and the law."); *see also Stepp v. Stepp*, 898 A.2d 724, 725 (R.I. 2006) (mem.).

For all of these reasons, we have no hesitation about affirming the ruling of the trial justice, whose patience in dealing with this seemingly endless case is to be commended.

# V

## Conclusion

For the reasons set forth in this opinion, we affirm the order of the Superior Court. The record may be returned to that tribunal.

---

2020), is evidence of the fact that the course of this entire litigation has been anything but smooth.

**Chief Justice Suttell, dissenting.** I am in complete harmony with the majority's conclusion "that the trial justice did not abuse his discretion in granting plaintiff's motion to dismiss the appeal" for failure to order the transcripts in a timely manner. Nevertheless, I dissent for the reasons set forth by Justice Goldberg in her dissenting opinion. I believe that this appeal was rendered moot when the defendant tendered a cashier's check to the plaintiff in the amount of $2,987,515.56, without conditions, thereby satisfying the judgment debt in full. *See Sager v. Moy*, 15 R.I. 528, 529, 9 A. 847, 848 (1887) ("[F]or it is well settled that payment by one primarily liable as a judgment debtor extinguishes the judgment."). For that reason, this protracted case is no longer justiciable and should be quietly laid to rest.

Although I concur in the judgment affirming the order of the Superior Court, I would dismiss the defendant's appeal on the grounds of mootness.

**Justice Goldberg, dissenting.** Because this case is moot, I dissent from the decision of the majority that upholds the dismissal of an appeal based on a fourteen-day delay ordering the transcripts, after the transcripts had been filed and docketed in the Superior Court. The record before this Court manifestly demonstrates that the judgment in this case was fully and voluntarily satisfied, without conditions, on February 22, 2024, a fact the majority opinion overlooks. Based upon well-established principles of mootness, this Court need not, and indeed

- 22 -

should not, proceed to decide whether the dismissal of this appeal—from a multimillion-dollar judgment—was an abuse of discretion.

The justiciability of a case or controversy is this Court's first order of business because "without the presence of a justiciable case or controversy, judicial power is at its weakest ebb." *National Education Association Rhode Island v. Town of Middletown by and through Dible*, 210 A.3d 421, 425 (R.I. 2019) (quoting *Robar v. Robar*, 154 A.3d 947, 948 (R.I. 2017) (mem.)). We need not take the extraordinary step of addressing the dismissal of this appeal because our decision would have no effect—the judgment was satisfied—thus terminating defendant's ongoing stake in the appeal. *Seibert v. Clark*, 619 A.2d 1108, 1110 (R.I. 1993). In a marked departure from settled law, the majority sidesteps this crucial step because it "would require a remand for fact-finding." This is a red herring. Two justices of this Court are of the opinion that this case is moot and there is not a scintilla of evidence to suggest otherwise. Mootness has fallen on the sword of convenience.

On March 17, 2023, a verdict in favor of plaintiff awarded $1,164,138.43 in damages. Judgment for $2,856,572.45 was entered on March 20, 2023. On June 7, 2023, after the trial justice passed on the parties' posttrial motions, defendant filed a notice of appeal to this Court. Unquestionably, defendant was required to order the requisite transcripts in a timely manner in order to properly perfect the appeal. *See* Article I, Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure. The

- 23 -

defendant was fourteen days late in ordering the transcripts and even later in paying for them. Although I agree with the trial justice's findings in this case concerning counsel's diabolical behavior, including imposing sanctions and awarding plaintiff costs and attorneys' fees for numerous motions to compel and motions to adjudge in contempt and Doucette's declared and shameful intention to pursue a course of "procedural gamesmanship" against the decedent's daughters, the basis of this dismissal is the timeliness of the transcripts.

While the majority focuses on defendant's fourteen-day delay in ordering the transcripts, it accords no weight to the fact that the transcripts had been filed in the Superior Court and certified to this Court *before* the case was dismissed. A party's delay in ordering a transcript has come before this Court on numerous occasions. I know of no case in which this Court has granted a motion to dismiss an appeal when the transcripts, although late, have been filed before the motion to dismiss was heard. This case is a first. I wholly disagree that these are the proper grounds to affirm the dismissal of any appeal from a two-million-dollar judgment, even this one.

Thus, I view this as an effort to avoid declaring this case moot and am not convinced the decision would stand if the judgment had not been satisfied. One need only contemplate the consequences and chaos to plaintiff, her attorney, and the court were this Court to vacate the dismissal and reinstate the appeal. The funds have been

distributed. Now what? This is why courts determine whether a case is moot as the first order of business. Thus, I decline to engage.

Despite its scant reference to the post-judgment phase of this appeal—while overlooking the bizarre and troubling manner in which defendant has conducted himself by satisfying the judgment and continuing to pursue the appeal—the majority ignores the critical events that render this case moot. According to our long-standing principles, "[t]he constituent parts of a justiciable claim include a plaintiff who has standing to pursue the action and some legal hypothesis which will entitle the plaintiff to real and articulable relief." *Lacera v. Department of Children, Youth, and Families*, 272 A.3d 1064, 1067 (R.I. 2022) (quoting *Bowen v. Mollis*, 945 A.2d 314, 317 (R.I. 2008)). Because defendant has no prospect for articulable relief, the matter before this Court no longer constitutes a justiciable controversy—the funds have been disbursed.

On February 22, 2024, eight months after defendant filed a notice of appeal on June 7, 2023, and three months after the appeal was dismissed in Superior Court, defendant forwarded $2,987,515.56 to plaintiff, in full satisfaction of the judgment, without conditions. The record is clear. The appeal was pending in this Court. An execution had not issued. There was no stay of execution because defendant knowingly failed to deposit the requisite funds in the Registry of the Superior Court. There was no notice to plaintiff's counsel that defendant intended to pursue the

- 25 -

appeal.[14] Factfinding to determine whether this tawdry episode was voluntary on the part of defendant has been waived and is otherwise unnecessary.

Critically, upon receipt of the bank check from defendant, plaintiff filed a document entitled "Satisfaction of Judgment" in the Superior Court. The check was cashed; the funds were distributed; the case was over. Counsel for plaintiff explained that after receipt of the funds she contacted defense counsel confirming that he would withdraw the appeal; she received no response. Defense counsel has represented to this Court that he "declined" plaintiff's request to withdraw the appeal. This statement is not true; counsel ignored the request and failed to notify plaintiff's counsel or this Court that he intended to pursue the appeal despite having satisfied the judgment.

At oral argument, defense counsel represented to this Court that the judgment was satisfied in order to stop the accrual of interest, while the appeal remained pending. This is an admission. Satisfaction of a judgment designed to stop the accrual of interest is a voluntary act, which the majority fails to address. The majority's reliance on the tentative requirement of factfinding with credibility

---

[14] In my mind, the voluntary decision to decline to deposit the funds for a supersedeas bond speaks volumes concerning the manner in which defendant addressed this appeal. The order granting the stay of execution was issued on September 19, 2023, and was conditioned on defendant depositing $3,100,000 in the Registry of the Superior Court. He failed to do so. I suggest that Doucette's campaign of "procedural gamesmanship," aided by the assistance of counsel, was expensive for the estate.

determinations to avoid addressing the preeminent controlling issue of mootness is incorrect and unfathomable.

In arguing against a finding of mootness, defendant points to scant caselaw from other jurisdictions to support his contention that the trial justice abused his discretion in dismissing the appeal; and, notwithstanding that the judgment has been satisfied, he is entitled to pursue the appeal on the merits to claw back the funds that were distributed over a year ago.

The defendant directs our attention to a case from Missouri as support for his contention that the appeal is not moot because the payment was involuntary. *See Kinser v. Elkadi*, 654 S.W.2d 901, 903 (Mo. 1983) (en banc). *Kinser* is inappropriate to the case at bar. In *Kinser*, a medical malpractice case, the jury awarded $900,000 in damages and an additional $25,000 for loss of consortium to the plaintiffs. *Id.* at 902. One of the defendant's insurers, Aetna Casualty and Surety Company, agreed to pay the premium for a supersedeas bond by a specific date and time; and failed to do so. *Id.* Within minutes of the deadline, the plaintiffs filed a writ of garnishment in aid of execution, and almost immediately thereafter, Aetna paid the garnishment amount into the court Registry and abandoned the case. *Id.* Significantly, Aetna reserved the right to a refund if the case were reversed on appeal and no satisfaction of judgment was entered by the plaintiffs. *Id.* A second insurer, St. Paul Fire and Marine Insurance Company, entered into a settlement contract with the plaintiffs in

which the plaintiffs agreed to a partial satisfaction of judgment after resolution of the appeal. *Id.*

In the face of a complicated procedural record, the *Kinser* court ultimately set forth two propositions which, defendant contends, support his argument that the satisfaction of the judgment to the Jacqueline Glassie Estate was involuntary. First, in *Kinser*, the court recognized that "when a defendant voluntarily pays a judgment rendered against him, he may not appeal from that judgment." *Kinser*, 654 S.W.2d at 903. But "[w]hen a defendant pays a judgment *after execution or writ of garnishment in aid of execution has issued*, courts have generally held that payment was involuntary." *Id.* (emphasis added). The *Kinser* court further recognized that there was a strong inference of legal coercion because payment was made after the writ of execution had issued. *See id.* The defendant attempts to persuade this Court that despite the representation that the judgment was satisfied in order to stop the running of interest, the payment was nonetheless involuntary. This argument is without merit. An execution did not enter. Accordingly, defendant's tender of payment on the judgment was voluntary.

It is abundantly clear that the case before this Court is moot. This Court has consistently held that "[a] question is moot if a court's judgment would fail to have a practical effect on the existing controversy." *Lynch v. Rhode Island Department of Environmental Management*, 994 A.2d 64, 71 (R.I. 2010) (internal quotation marks

- 28 -

and deletion omitted). Although this Court has recognized that there are limited circumstances where "a determination of mootness does not always preclude judicial review," we do so only when the cases before us are "of extreme public importance, which [is] capable of repetition, but which evade review." *National Education Association Rhode Island*, 210 A.3d at 426 (quoting *Robar*, 154 A.3d at 948). The issue before us is not of extreme public importance; this case is moot. *See id.*

Unfortunately, in sidestepping the issue of mootness, the majority ignores the record before us, which is devoid of any evidence that payment was made involuntarily. The defendant knowingly failed to secure a stay of execution. There was no reservation of rights or notice to the plaintiff that payment did not terminate the controversy; and, critically, the plaintiff's counsel *cashed the check and distributed the funds* to her client. The majority overlooks defense counsel's deception and its cost to this innocent plaintiff and her counsel.

Accordingly, I reject the majority's rationale in deciding the fate of this appeal. The defendant paid the judgment; there is no longer a justiciable claim. Although the defendant has taken issue with the trial justice's decision to dismiss the appeal based on his failure to timely order the transcripts, I am firmly of the opinion that this Court can no longer address these contentions because the defendant satisfied the judgment and the case is moot. Consequently, I dissent.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Alison Glassie, in her capacity as Executrix of the Estate of Jacquelin C. Glassie and as Assignee of Wells Fargo Bank, N.A., Trustee of the Jacquelin Caffrey Glassie Trust II v. Paul Doucette, in his capacity as Executor of the Estate of Donelson C. Glassie, Jr. |
| **Case Number** | No. 2023-372-Appeal. (NP 16-265) |
| **Date Opinion Filed** | June 25, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiff: Daniel R. Prentiss, Esq. |
| | For Defendant: Melissa M. Horne, Esq. |